# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                  No. CR 19-2848 JB

VICTOR KEARNEY and ROBERT FISER,

      Defendants.

## MEMORANDUM OPINION AND ORDER[1]

**THIS MATTER** comes before the Court on the Second Set of Objections to the Presentence Report Regarding Inappropriate Inclusion of Proposed "Criminal Activity" Enhancement in Guidelines Calculation, filed July 10, 2023 (Doc. 172)("Objection"). The issue presented is whether Defendant Victor Kearney's base offense level is subject to a 2-level increase under section 2T1.1(b)(1) of the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G."), because Kearney "failed to report or to correctly identify the source of income exceeding $10,000 in any year from criminal activity." U.S.S.G. § 2T1.1(b)(1). The Court overrules the Objection, because a preponderance of the evidence supports a finding that, in 2010, Kearney failed to report the proceeds of his conspiracy with co-Defendant Robert Fiser on his 2010 income tax returns in excess of $10,000.00.

The Grand Jury indicted Kearney and Fiser on August 27, 2019. See Indictment at 1, filed August 27, 2019 (Doc. 2). The Indictment alleges that Kearney is a beneficiary of the Mary Pat

---

[1]This Memorandum Opinion and Order disposes of the Second Set of Objections to the Presentence Report Regarding Inappropriate Inclusion of Proposed "Criminal Activity" Enhancement in Guidelines Calculation, filed July 10, 2023 (Doc. 172). The Court will issue, at a later date, a longer Memorandum Opinion and Order more fully detailing the rationale for its decision.

Abruzzo-Kearney Testamentary Trust B and C.   See Indictment ¶ 1, at 1.   Additionally, the Indictment alleges that Fiser is a New Mexico tax attorney.   See Indictment ¶ 2, at 1.   The Indictment states:

> From on or about October 20, 2009, to on or about November 4, 2016, in Bernalillo County in the District of New Mexico, and elsewhere, the defendants . . . knowingly, unlawfully, and willfully combined, conspired, confederated, agreed, and acted interdependently with one another and with others known and unknown to the Grand Jury to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful Government function of the Internal Revenue Service of the Treasury Department in the ascertainment, computation, assessment, and collection of the revenue: to wit, income taxes . . . .

Indictment ¶ 3, at 1-2.  More specifically, the Indictment alleges that Kearney and Fiser prepared, signed, and filed federal income tax returns that "substantially underreport" Kearney's taxable income, Indictment ¶¶ 5, 6, at 2, namely his income from the Mary Pat Abruzzo-Kearney Testamentary Trust B and C, see Indictment ¶¶ 9-20, at 2-4.  Accordingly, the Indictment brings three charges against Kearney and Fiser: (i) Conspiracy, in violation of 18 U.S.C. § 371; (ii) Aiding and Assisting in Preparation of False and Fraudulent Return, Statement, or Other Document, in violation of 26 U.S.C. § 7206(2); and (iii) Making and Subscribing False Return, Statement, or Other Document, in violation of 26 U.S.C. § 7206(1).  See Indictment at 1.

Fiser pled guilty to one count of Aiding and Abetting in Preparation of a False and Fraudulent Return, in violation of 26 U.S.C.§ 7206(2), and one count of Conspiracy, in violation of 18 U.S.C. § 371.  See Plea Agreement at 2, filed July 11, 2022 (Doc. 50).  The Court sentenced Fiser to the custody of the Bureau of Prisons for 15 months, plus 3 years of supervised release.  See Judgment in a Criminal Case at 3-4, filed February 7, 2023 (Doc. 78).  Kearney did not plead guilty, and he proceeded to trial on two counts on March 6, 2023.  See Clerk's Minutes at 1, filed March 6, 2023 (Doc. 142)("Trial Clerk's Minutes").  The jury found Kearney guilty on one count of Conspiracy, in violation of 18 U.S.C. § 371, and one count of Making and Subscribing a False

Return, in violation of 26 U.S.C. § 7206(1).  See Verdict (dated March 10, 2023), filed March 10, 2023 (Doc. 131).

On May 26, 2023, the United States Probation Office ("USPO") filed the Presentence Report (Doc. 153)("PSR").  The PSR groups Kearney's two counts for the purposes of calculating Kearney's offense level.  See PSR ¶ 26, at 8; U.S.S.G. § 3D1.2(b).  The PSR establishes that Kearney's base offense level is 20.  See PSR ¶ 27, at 8.  The PSR applies a 2-level enhancement to Kearney's base offense level pursuant to U.S.S.G. § 2T1.1(b)(1), because Kearney "failed to report or to correctly identify the source of income exceeding $10,000 in any year from criminal activity."  PSR ¶ 28, at 8.  See U.S.S.G. § 2T1.1(b)(1).  The PSR does not apply any decreases to Kearney's base offense level.  See PSR ¶¶ 27-34, at 8.  In sum, the PSR asserts that Kearney's total offense level is 22.  See PSR ¶ 35, at 8.  With an offense level of 22 and a criminal history category of I, the PSR asserts that Kearney's Guideline imprisonment range is 41 to 51 months. See PSR ¶ 56, at 12.

In the Objection, Kearney asks the Court not to apply the 2-level increase under § 2T1.1(b)(1), because "there has never otherwise been an indication of income for Mr. Kearney from 'criminal activity' in this case."  Objection at 1.  Kearney explains that the § 2T1.1(b)(1) enhancement applies where a defendant "received more than $10,000 from conduct constituting a crime."  Objection at 6.  Kearney states that the criminal conduct at issue in this case is Kearney's failure to report income from his trusts on his individual tax returns.  See Objection at 2.  He alleges that he did not "derive[] income" from that criminal activity, i.e. his failure to report trust income. Objection at 3, 6-7.  Instead, Kearney alleges that all of his income in this case -- i.e., his trust payments -- was from a lawful source: the lawfully created and administered trusts.  See Objections at 6-7.  Kearney gestures to several out-of-circuit cases in which courts have applied the

§ 2T1.1(b)(1) enhancements in cases where defendants financially profited from criminal activity, for example, by engaging in prostitution or stealing money.   See Objection at 7 (citing United States v. Fairchild, 819 F.3d 399 (8th Cir. 2016); United States v. McKinney, 686 F.3d 432 (7th Cir. 2012); United States v. Ellis, 440 F.3d 434 (7th Cir. 2006)).   According to Kearney, these cases are distinct, because "[t]his is a case of not reporting trust income, distinct from cases in which *actual* criminal activity provided income enhancement."  Objection at 7 (italics in original). For these reasons, he asks the Court not to apply the 2-level increase to his sentence.  Objection at 7.

The Court held a hearing on the Objection, among other motions, on July 11, 2023.  See Minute Order, filed July 10, 2023 (Doc. 176).[2]  At the hearing, the Court informed the parties about its thinking on the Objection.[3]  The Court indicated that it was inclined to sustain the Objection.  The Court explained that it had determined that the United States Court of Appeals for the Fifth Circuit's decision in United States v. Heard, 709 F.3d 413 (5th Cir. 2013)("Heard") is instructive.  The Court stated that, under Heard, § 2T1.1(b)(1) could apply to Kearney in theory. Nevertheless, the Court explained that it was not prepared, on the record before it, to find by a preponderance of the evidence that § 2T1.1(b)(1) applies to Kearney.  The Court noted that the

_____

[2]Kearney filed the Objection the morning of Monday, July 10, 2023.  See Objection at 1. The sentencing hearing was scheduled for July 11, 2023, at 10:00 a.m.  See Order, filed June 6, 2023 (Doc. 163).  Shortly before the sentencing hearing began, the USPO filed the Third Addendum to the Presentence Report, filed July 11, 2023 (Doc. 177)("Third PSR Addendum"). In the Third PSR Addendum, the USPO indicates that the § 2T1.1(b)(1) enhancement "would not apply" in this case, because Kearney's trust income is from a lawful source.  Third PSR Addendum at 1-2.

[3]At the time the Court drafted this Memorandum Opinion and Order, it did not have the court reporter's transcript of the July 11, 2023, hearing.  Accordingly, the Court summarizes the July 11, 2023, hearing based on its own recollection.  The Court will provide a more fulsome description of the July 11, 2023, hearing when it issues the longer Memorandum Opinion and Order.

PSR describes the amount of money at issue in a given year in general terms, such that the Court cannot, on the basis of the PSR, determine that Kearney underreported more than $10,000.00 in income from criminal activity in a particular year, as § 2T1.1(b)(1) requires.  See U.S.S.G. § 2T1.1(b)(1).

The Court allowed the United States to supplement the record.  The United States provided the Court with emails it exchanged with USPO in preparation for sentencing.  See Correspondence, filed July 11, 2023 (Doc. 180).  The Correspondence includes, among other things, a chart summarizing Kearney's taxes due and owing in 2007, 2008, 2009, 2010, and 2011.  See Correspondence at 12.  The United States also called the case agent who had worked on the case to testify.  The case agent explained to the Court the taxes due and owing chart that the United States had provided.  At the conclusion of the hearing, the parties agreed to continue sentencing and submit further briefing on the § 2T1.1(b)(1) issue.

## ANALYSIS

The Court overrules the Objection.   U.S.S.G. § 2T1.1(b)(1) provides for a base offense level enhancement in cases where a defendant is convicted of one of various tax offenses.  See U.S.S.G. § 2T1.1 Commentary, Statutory Provisions.  It provides for a 2-level increase to a defendant's base offense level "if the defendant failed to report or to correctly identify the source of income exceeding $10,000 in any year from criminal activity . . . ."  U.S.S.G. § 2T1.1(b)(1). See United States v. Hoskins, 652 F.3d 1086 (10th Cir. 2011).  "Criminal activity" for U.S.S.G. § 2T1.1(b)(1)'s purposes is "any conduct constituting a criminal offense under federal, state, local, or foreign law."  U.S.S.G. § 2T1.1(b)(1) Application Note 4.  See United States v. Stubbs, 764 F. App'x 682 (10th Cir. 2019).  Typically, the § 2T1.1(b)(1) enhancement applies where a defendant engages in some predicate criminal activity, financially profits from that criminal activity in excess

of $10,000.00, and then fails to report the proceeds of his or her criminal activity on his or her income tax returns.  See, e.g., United States v. Ellis, 440 F.3d 434 (7th Cir. 2006)(affirming § 2T1.1(b)(1)'s applicability where a clergyman stole over $500,000.00 from a church collection plate and then failed to report that income on his tax returns).

Courts have also applied the § 2T1.1(b)(1) enhancement in cases where the predicate criminal activity is conspiracy to defraud the United States, in violation of 18 U.S.C. § 371.  For example, the Fifth Circuit affirms § 2T1.1(b)(1)'s application in Heard, 709 F.3d at 413.  John Heard is a former police officer turned private security business owner.  See 709 F.3d at 418.  He worked with Gary Lambert, a certified public accountant, to incorporate a private security business.  See 709 F.3d at 418.  Over the years, Heard and Lambert engaged in a number of deceptive business practices to avoid paying employment taxes.  See 709 F.3d at 418.  The United States alleged that they conspired to defraud the United States.  See 709 F.3d at 418.  Heard was convicted of: (i) one count of conspiracy to defraud the United States; (ii) two counts of tax evasion; (iii) one count of bribery of a public official; (iv) one count of willfully making and subscribing to a false return; and (v) one count of corrupt interference with internal revenue laws. See 709 F.3d at 418.  At sentencing, the trial judge applied the § 2T1.1(b)(1) enhancement to Heard's base offense level.  See 709 F.3d at 423.

Heard appealed.  See 709 F.3d at 423.  On appeal, Heard argued that the "enhancement was improper because it can only apply when the money was obtained by some illegal means, and the income [at issue] was legitimate income earned from security-guard services."  709 F.3d at 423.  By contrast, the United States had argued below that "Heard stole from the IRS by withholding in excess of $10,000 in employment taxes in 2003 and not paying the money to the

IRS." 709 F.3d at 423.   The Fifth Circuit disagrees with Heard's argument and upholds § 2T1.1(b)(1)'s applicability.   See 709 F.3d at 423-24.   The Fifth Circuit explains:

> Application of the § 2T1.1(b)(1) enhancement was proper here.  We find the Government's argument before the district court persuasive, and we may affirm on any ground in the record.  The enhancement was not applied here, as Heard argues, merely because the funds were not reported on his personal tax return.  Rather, the illegality of the funds is demonstrated by Heard's other tax convictions, which concern interference with the IRS's collection of these employment taxes. Even if Heard had reported the withheld employment taxes as income, they would still have been derived from his conspiracy to defraud the United States.  The facts contained in the presentence investigation report (P.S.R.), which have not been challenged on appeal, show that over the course of the conspiracy, Heard's companies failed to pay to the IRS millions of dollars in employment taxes. There was evidence that in 2003, SPI failed to pay over $2 million in payroll taxes.  An IRS revenue agent testified that Heard received unreported distributions from SPI of $629,000 in 2003. Heard's expert witness even admitted that the distributions that Heard received in 2003 could have been used to pay the payroll taxes due, and he testified that using over $500,000 to pay personal expenses from SPI when SPI owed about $450,000 in the first quarter of 2003 "wasn't probably the most prudent thing to do" and that the law would require SPI to pay employment taxes before paying personal expenses. In this situation, it was not clear error for the district court to find that, instead of paying employment taxes, Heard used the money to pay personal expenses and that Heard failed to report those diverted funds as income on his personal tax return.

Heard, 709 F.3d at 423-24 (footnote omitted).

The Fifth Circuit's analysis in Heard is instructive here.  Like in Heard, the "the illegality of the funds" at issue here is "derived from [Kearney's] conspiracy [with Fiser] to defraud the United States."  709 F.3d at 423-24.  Here, Kearney and Fiser conspired to underreport Kearney's trust income.  See PSR ¶ 7, at 4-5.  Together, they submitted at least four income tax statements that underreported Kearney's trust income: 2007, 2009, 2010, and 2011.  See Verdict at 1-2.  Year over year, Kearney benefitted financially from that conspiracy.  For example, the jury found that in 2009, Kearney underreported his trust income.  See Verdict at 1.  The case agent explained at the July 11, 2023, hearing that Kearney owed $223,675.00 in taxes on trust income in 2009.  See Correspondence at 12.  Kearney reported on his 2009 tax returns, however, that he owed $0.00 in

taxes on trust income in 2009.  <u>See</u> Correspondence at 12.  The jury found that Kearney's decision to sign his 2009 tax returns that failed to report he had taxable trust income constituted an overt act in furtherance of his conspiracy with Fiser.  <u>See</u> Verdict at 1.  The case agent explained at the July 11, 2023, hearing, that, in 2010, Kearney did not report the $223,675.00 he owed from 2009 as income or as back taxes on his 2010 income tax returns.

The Court construes the $223,675.00 that Kearney retained after filing his taxes in 2009 as income from his conspiracy with Fiser.  In common parlance, "income" is typically associated with earning a wage or money.  The plain meaning of "income," however, is broader and encompasses a "gain or recurrent benefit usually measured in money that derives from capital or labor."  Income, Merriam-Webster Dictionary, Online Ed, https://www.merriam-webster.com/dictionary/income (last visited July 12, 2023)("Income Definition").  <u>See</u> 26 U.S.C. § 61 (defining "gross income" as "all income from whatever source derived").  In 2009, when Kearney conspired to underreport his trust income, he received a "gain" that can be "measured in money."  Income Definition.  As Benjamin Franklin once wrote "a penny saved is two pence clear," Benjamin Franklin, <u>Poor Richard's Almanac</u> (1737), which is remembered today as "a penny saved is a penny earned."  Here, Kearney "saved" the taxes he owed on his trust income by unlawfully withholding it from the IRS, and that money "saved" is money earned -- income.  It follows that, in 2010, when Kearney failed to report the $223,675.00 in conspiracy income from 2009 on his 2010 income tax returns, he "failed to report . . . the source of income from . . . criminal activity," <u>i.e.</u>, his conspiracy to defraud the United States with Fiser.  U.S.S.G. § 2T1.1(b)(1).  The case agent also explained that, if Kearney had declared the $223,675.00 in 2009 conspiracy income on his 2010 income taxes, the applicable income tax rate in 2010 would have required Kearney to pay more than $10,000.00 in income tax on that 2009 conspiracy income.  In other words,  Kearney

benefitted more than $10,000.00 by failing to report the 223,675.00 in 2009 conspiracy income on his 2010 income taxes.

Kearney repeated this practice in 2010 and 2011.  See Correspondence at 12.  In 2010, Kearney owed $277,211.00 in taxes on his trust income.  See Correspondence at 12.  He reported that he owed $0.00 in taxes on trust income.  See Correspondence at 12.  Then, in 2011, Kearney did not report the $223,675.00 in 2009 conspiracy income, or the $277,211.00 in 2010 conspiracy income on his 2011 income tax return.  See Correspondence at 12.  Kearney and Fiser's conspiracy was a continuing offense, and, as the years progressed, the two continually failed to report the conspiracy's proceeds as income on Kearney's income tax returns.

As the Court explained at the start of the July 11, 2023, hearing, it was inclined to sustain the Objection.  At the time, the Court could not conclude by a preponderance of the evidence that the income that Kearney obtained from his conspiracy with Fiser exceeded $10,000.00 in a particular tax year, as § 2T1.1(b)(1) requires.  See U.S.S.G. § 2T1.1(b)(1).  After hearing from the case agent at the July 11, 2023, hearing, and reviewing the Correspondence, however, the Court finds by a preponderance of the evidence that Kearney's failure to report the $223,675.00 he should have paid in 2009 is the equivalent of $223,675.00 in income from a conspiracy in 2009.   A preponderance of the evidence also supports a finding that Kearney did not report that $223,675.00 in 2009 conspiracy income on his 2010 income tax returns, and that, as a result, he received a benefit of over $10,000.00 in 2010.  For these reasons, the Court determines that a preponderance of the evidence supports a finding that § 2T1.1(b)(1) applies to Kearney's base offense level.

**IT IS ORDERED** that: (i) the objection in the Second Set of Objections to the Presentence Report Regarding Inappropriate Inclusion of Proposed "Criminal Activity" Enhancement in Guidelines Calculation, filed July 10, 2023 (Doc. 172), is overruled; (ii) Defendant Victor

Kearney's base offense level is subject to a 2-level increase under U.S.S.G. § 2T1.1(b)(1); (iii) Kearney's adjusted total offense level is 22; and (iv) with an offense level of 22 and criminal history category of I, Kearney's Guideline imprisonment range is 41 to 51 months.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Alexander M. M. Uballez
  United States Attorney
Sean J. Sullivan
Kimberly A Brawley
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

   *Attorneys for the Plaintiff United States of America*

Paul Linnenburger
Lane Linnenburger & Lane LLP
Albuquerque, New Mexico

   *Attorneys for Defendant Victor Kearney*

Jason Bowles
Bowles Law Firm
Albuquerque, New Mexico

   *Attorneys for Defendant Robert Fiser*