# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                No. CR 19-2848 JB

VICTOR KEARNEY and ROBERT FISER,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Motion for New Trial and for Extension of Time to Submit Supplemental Motion for New Trial, filed March 24, 2023 (Doc. 141)("Motion"). The Court held a hearing on the Motion on May 30, 2023. See Clerk's Minutes at 1, filed May 30, 2023 (Doc. 155)("May 30 Clerk's Minutes"). The issues presented are: (i) whether Defendant Victor Kearney is entitled to a new trial, because the Court's jury instruction regarding Kearney's 18 U.S.C. § 371 conspiracy charge misstated the elements of a Klein conspiracy[1]; (ii) whether Kearney is entitled to a new trial, because the Court's jury instruction regarding Kearney's advice-of-counsel defense erroneously implied that the defense applied only to one count, and not to both counts; (iii) whether Kearney is entitled to a new trial, because the Court did not excuse a juror, Christopher Clawson, more quickly after Clawson looked visibly upset on the second day of trial and professed that Kearney made him anxious; and

---

[1]A Klein conspiracy is a specific conspiracy that 18 U.S.C. § 371 penalizes. A Klein conspiracy gets its name from a decision from the United States Court of Appeals for the Second Circuit, United States v. Klein, 247 F.2d 908 (2d Cir. 1957)("Klein"), in which the Second Circuit determined that § 371 "not only includes the cheating of the Government out of property or money, but 'also means to interfere with or obstruct one of its lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest.'" 247 F.2d at 916 (quoting Hammerschmidt v. United States, 265 U.S. 182, 188 (1924)).

(iv) whether Kearney is entitled to a new trial, because a juror, Scott Maethner, indicated during trial that he knows one of Kearney's former business associates, Kevin Yearout.  The Court concludes that: (i) Kearney is not entitled to a new trial on the basis of the Court's conspiracy instruction, because the Court's instruction correctly reflects the elements of conspiracies to defraud the United States of America, which encompasses <u>Klein</u> conspiracies; (ii) Kearney is not entitled to a new trial on the basis of the Court's advice-of-counsel instruction, because the instruction did not impermissibly imply -- in its placement or its substance -- that Kearney's advice-of-counsel defense only applies to one count; (iii) Kearney is not entitled to a new trial on the basis of Clawson's excusal, because there is no indication that the Court's decision to wait before excusing Clawson prejudiced the other jurors; and (iv) Kearney is not entitled to a new trial on the basis of Maethner's prior business relationship with Yearout, because there is no indication that Maethner's limited, professional relationship with Yearout prejudiced Maethner against Kearney.  Accordingly, the Court will deny the Motion.

## **PROCEDURAL BACKGROUND**

The Court begins with a brief overview of the relevant procedural background.  The Court first examines the parties' relevant pre-trial submissions regarding jury instructions.  Next, the Court provides relevant excerpts from its jury instructions.  Third, the Court provides background regarding jury selection, with a focus on Clawson and Maethner.  Next, the Court summarizes the Motion and related briefing.  Fifth, the Court provides an overview of the arguments the parties raised at the hearing on the Motion.  Finally, the Court summarizes the parties' post-hearing submissions.

1.     **The Parties' Pre-Trial Submissions Regarding Jury Instructions**.

The Grand Jury indicted Kearney and his co-Defendant Robert Fiser on August 27, 2019.

See Indictment at 1, filed August 27, 2019 (Doc. 2).  The Indictment alleges that Kearney is a

beneficiary of the Mary Pat Abruzzo-Kearney Testamentary Trust B and C.   See Indictment ¶ 1,

at 1.  Additionally, the Indictment alleges that Fiser is a New Mexico tax attorney.  See Indictment

¶ 2, at 1.  The Indictment states:

> From on or about October 20, 2009, to on or about November 4, 2016, in
> Bernalillo County in the District of New Mexico, and elsewhere, the
> defendants . . . knowingly, unlawfully, and willfully combined, conspired,
> confederated, agreed, and acted interdependently with one another and with others
> known and unknown to the Grand Jury to defraud the United States for the purpose
> of impeding, impairing, obstructing, and defeating the lawful Government function
> of the Internal Revenue Service [("IRS")] of the Treasury Department in the
> ascertainment, computation, assessment, and collection of the revenue: to wit,
> income taxes . . . .

Indictment ¶ 3, at 1-2.  More specifically, the Indictment alleges that Kearney and Fiser prepared,

signed, and filed federal income tax returns that "substantially underreport[ed]" Kearney's taxable

income, Indictment ¶¶ 5-6, at 2, namely his income from the Mary Pat Abruzzo-Kearney

Testamentary Trust B and C, see Indictment ¶¶ 9-20, at 2-4.  Accordingly, the Indictment brings

three charges against Kearney and Fiser: (i) Conspiracy, in violation of 18 U.S.C. § 371;

(ii) Aiding and Assisting in Preparation of False and Fraudulent Return, Statement, or Other

Document, in violation of 26 U.S.C. § 7206(2); and (iii) Making and Subscribing False Return,

Statement, or Other Document, in violation of 26 U.S.C. § 7201(1).  See Indictment at 1.

Fiser pled guilty to one count of Aiding and Abetting in Preparation of a False and

Fraudulent Return, in violation of 26 U.S.C.§ 7206(2), and one count of Conspiracy, in violation

of 18 U.S.C. § 371.  See Plea Agreement at 2, filed July 11, 2022 (Doc. 50).  The Court sentenced

Fiser to the custody of the Bureau of Prisons for 15 months, plus 3 years of supervised release.

See Judgment in a Criminal Case at 3-4, filed February 7, 2023 (Doc. 78).  Kearney did not plead

guilty, and he proceeded to trial on March 6, 2023.  See Clerk's Minutes at 1, filed March 6, 2023

(Doc. 142)("Trial Clerk's Minutes").

Before trial, Kearney submitted Defendant Victor Kearney's Proposed Jury Instructions,

filed February 23, 2023 (Doc. 97)("First Kearney Proposed Instructions").  In the First Kearney

Proposed Instructions, Kearney asks the Court to give the jury, among other instructions, the

following instruction:

> Mr. Kearney is charged in count one of the Indictment with a violation of 21 U.S.C. section 7201.  This law makes it a crime to conspire to defeat the lawful function of the Internal Revenue Service of the United States.
>
> To find Mr. Kearney guilty of this offense you must be convinced that the government proved each of the following beyond a reasonable doubt:

|  |  |
|---|---|
| First: | Mr. Kearney knowingly entered an agreement with another person; |
| Second: | The agreement was intended to violate the law; |
| Third: | Mr. Kearney knowingly and voluntarily participated in said agreement and specifically intended to violate the law; |
| Fourth: | Mr. Kearney and others in the agreement were interdependent; and |
| Fifth: | Mr. Kearney or others in the agreement engaged in at least one overt act furthering the intent to defraud the IRS. |

> For purposes of this instruction, fraud is an intentional or deliberate misrepresentation of the truth for the purpose of inducing another in reliance on it to part with a thing of value or to surrender a legal right and to act with an "intent to defraud" means to act knowingly and with the intention or purpose to deceive or cheat someone.
>
> Parties to an agreement are "interdependent" if they intended to act together for their shared mutual benefit within the scope of agreement as charged.

- 4 -

First Kearney Proposed Instructions at 3 (citing Criminal Pattern Jury Instruction Committee of the United States Circuit Court of Appeals for the Tenth Circuit, Criminal Pattern Jury Instructions § 2.19, at 111 (2021 ed.)(Conspiracy)(modified)("Pattern Instructions"); United States v. Adkinson, 158 F.3d 1147 (11th Cir. 1998); United States v. Klein, 247 F.2d 908 (2d Cir. 1957)("Klein"); Cheek v. United States, 498 U.S. 192 (1991)).

Plaintiff United States of America also submitted proposed jury instructions.  See United States' Requested Jury Instructions, filed February 23, 2023 (Doc. 96)("United States Proposed Instructions").  In the United States Proposed Instructions, the United States requests that the Court provide the following instruction regarding Kearney's § 371 charge:

The defendant is charged with a violation of 18 U.S.C. § 371.

This law makes it a crime to conspire to commit an offense against the United States.

To find the defendant guilty of this crime you must be convinced that the government has proved each of the following beyond a reasonable doubt:

First:      the defendant agreed with at least one other person to violate the law.

Second:      one of the conspirators engaged in at least one overt act furthering the conspiracy's objective.

Third:      the defendant knew the essential objective of the conspiracy.

Fourth:      the defendant knowingly and voluntarily participated in the conspiracy.

Fifth:      there was interdependence among the members of the conspiracy; that is, the members, in some way or manner, intended to act together for their shared mutual benefit within the scope of the conspiracy charged.

United States Proposed Instructions at 29-30 (citing Pattern Instructions § 2.19, at 111).

Kearney then filed the Defendant Victor Kearney's Second Additional Proposed Jury Instructions, filed March 9, 2023 (Doc. 125)("Second Kearney Proposed Instructions").   In the Second Kearney Proposed Instructions, Kearney asks the Court to provide the following instruction regarding Kearney's advice-of-counsel defense:

> To enter a guilty verdict as to the charges in the Indictment, you must find that Mr. Kearney acted willfully.  Evidence has been presented as to Mr. Kearney's reliance on counsel, Robert Fiser, and this is a factor you may consider when determining whether Mr. Kearney acted willfully.
>
> You may find Mr. Kearney did not act willfully and is therefore not guilty if he requested advice of Robert Fiser as to a proposed action, disclosed all relevant facts to Mr. Fiser, received advice from Mr.  Fiser that the action to be taken was legal, and Mr. Kearney relied in good faith on Mr. Fiser's advice.

Second Kearney Proposed Instructions at 3 (citing United States v. Wenger, 427 F.3d 840 (10th Cir. 2005)).

### 2.   **Jury Selection**.

The case proceeded to trial on Monday, March 6, 2023.  See Trial Clerk's Minutes at 1. After meeting with counsel, the Court swore in the potential jurors and conducted voir dire.  See Trial Clerk's Minutes at 3.  During voir dire, Clawson indicated that he is a substitute teacher in Albuquerque, New Mexico.  See Draft Transcript of Voir Dire at 88:1-7 (taken March 6, 2023)(Court, Clawson)("Voir Dire Tr.").[2]  Clawson noted that he had a vacation scheduled in

---

[2]When the parties ordered the final trial transcript, they requested only the transcript of opening statements, testimony, and closing arguments.  Accordingly, the Court does not have access to a final version of the voir dire transcript.  The Court's citations to the voir dire transcript refer to the Court Reporter's original, unedited version.  Any citations to the final voir dire transcript may have different page and/or line numbers.

April, 2023, but that he is available for the next five days, the projected length of trial. <u>See</u> Voir Dire Tr. at 88:12-14 (Court, Clawson).

Maethner indicated that he moved from Minnesota to New Mexico in 1991 to work for the Air Force. <u>See</u> Voir Dire Tr. at 81:18-20 (Court, Maethner). Maethner explained that he now works at a local non-profit and that his wife is a stay-at-home mom. <u>See</u> Voir Dire Tr. at 81:21-82:5 (Court, Maethner). He added that his wife previously worked in various department stores in Albuquerque, California, and Wyoming. <u>See</u> Voir Dire Tr. at 82:12-15 (Maethner). Maethner indicated that he would be available for all five days of trial. <u>See</u> Voir Dire Tr. at 82:24-83:1 (Court, Maethner). During the United States' examination of Maethner, Maethner indicated that he feels the tax system is "too complex" and "vastly overcomplicated." Voir Dire Tr. at 127:14-15, 21 (Maethner). He added that "we're vastly overtaxed as a free country." Voir Dire Tr. at 127:22 (Maethner). Maethner also explained that he has professionals assist him in preparing and filing his taxes. <u>See</u> Voir Dire Tr. at 127:25-128:1 (Maethner). Maethener did not mention Yearout at any point during voir dire.

### 3. **Court's Continued Work on Jury Instructions.**

Once the trial was underway, the Court provided the parties with several iterations of its proposed final jury instructions. <u>See</u> Court's First Proposed Final Jury Instructions, filed March 8, 2023 (Doc. 123); Court's Second Proposed Final Jury Instructions, filed March 9, 2023 (Doc. 126); Court's Third Proposed Final Jury Instructions, filed March 9, 2023 (Doc. 127). Specifically, the Court's Third Proposed Final Jury Instructions suggested the following conspiracy instruction:

Mr. Kearney is charged in count 1 with a violation of 18 U.S.C. § 371.

This law makes it a crime to conspire to commit an offense against the United States.

To find Mr. Kearney guilty of this crime you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*:        Mr. Kearney agreed with at least one other person to violate the law.

*Second*:   one of the conspirators engaged in at least one overt act furthering the conspiracy's objective.

*Third*:      Mr. Kearney knew the essential objective of the conspiracy.

*Fourth*:    Mr. Kearney knowingly and voluntarily participated in the conspiracy.

*Fifth*:       there was interdependence among the members of the conspiracy; that is, the members, in some way or manner, intended to act together for their shared mutual benefit within the scope of the conspiracy charged.

Court's Third Proposed Final Jury Instructions at 17 (citing Pattern Instructions § 2.19, at 111

(modified)(italics in original).   The Court also suggested the following instruction regarding

Kearney's advice-of-counsel defense:

One element that the government must prove beyond a reasonable doubt is that Mr. Kearney had the unlawful intent to make a false material statement on the income tax return form for calendar year 2011.  Evidence that Mr. Kearney in good faith followed the advice of counsel would be inconsistent with such an unlawful intent.   Unlawful intent has not been proved if Mr. Kearney, before acting (i) requested for advice of counsel on the legality of a proposed action; (ii) made full disclosure of the relevant facts to counsel; (iii) received advice from counsel that the action to be taken will be legal; and (iv) relied in good faith on counsel's advice.

Court's Third Proposed Final Jury Instructions at 24 (citing Jury Instructions Committee of the

United States Court of Appeals for the Ninth Circuit, Model Criminal Jury Instructions 4.11, at 80

(2022 ed.)(Advice Of Counsel)(modified)("Ninth Circuit Pattern Instructions"); C.E. Carlson, Inc. v. S.E.C., 859 F.2d 1429, 1436 (10th Cir. 1988)).

After the Court excused the jury for the day on Thursday, March 9, 2023, the Court met with counsel to discuss the Court's Third Proposed Final Jury Instructions.  See Trial Clerk's Minutes at 19.  The Court informed the parties that it would go through each instruction individually, and "hear any objection, suggestions, comments."  Transcript of Trial at 973:8-15 (taken March 6-10, 2023), filed June 5, 2023 (Docs. 157-162)(Court)("Trial Tr.").[3]  Kearney asked whether the Court would like him to "preserve [his objections to the instructions] on every single one?"  Trial Tr. at 973:25 (Linnenburger).  The Court noted that the United States had indicated to which instructions Kearney objected, and told Kearney "if you want to rely on that . . . . If you want to say, jury objection, I think that will preserve it."  Trial Tr. at 974:1-9 (Court, Linnenburger).  Kearney agreed to the Court's suggestion.  See Trial Tr. at 974:10 (Linnenburger).  The Court then began working through the Court's Third Proposed Final Jury Instructions.  See Trial Tr. at 974:11 (Court).

When the Court reached the elemental instructions for both counts, Kearney reminded the Court: "Judge, just for the record, on the element, I submitted proposals."  Trial Tr. at 982:3-4 (Linnenburger).  The Court noted that Kearney's proposed conspiracy instruction differs from the Pattern Instructions, and asked Kearney to explain "what [he] wanted to try and do with those deviations."  Trial Tr. at 982:5-6 (Court).  Kearney replied that "I was trying . . . to incorporate

---

[3]The Court Reporter filed the final trial transcript on June 5, 2023.  Although the final trial transcript is complete and consecutively paginated, it is split into five volumes, one volume for each day of trial.  The Court Reporter filed each volume separately on the Court's electronic filing system.  Accordingly, the Court's citations to the trial transcript refer to the pages and lines from the complete transcript, but do not refer to the specific volume number.

that like in the -- I think it was the chief's decision on what -- in the context of tax fraud." Trial Tr. at 982:7-14 (Linnenburger). Kearney added that, "if we're having a separate reliance on counsel instruction, I think that that addresses part of . . . my proposed [instruction]." Trial Tr. at 982:7-10 (Linnenburger). The Court then laid out its plan for the elemental instructions and the related instructions:

> After . . . the elements on conspiracy, let's put the knowingly instruction there . . . .
> Let's then also put the unanimity . . . . And then we will put Count II's elements,
> and then we will put the willful instruction . . . and then we put the advice of
> counsel . . . . Do y'all like that order?

Trial Tr. at 982:15-23 (Court). Kearney agreed to the Court's proposed order of instructions. See Trial Tr. at 982:24 (Linnenburger).

The Court also explained how it had crafted its advice-of-counsel instruction. See Trial Tr. at 983:8-18 (Court). Specifically, the Court explained that it borrowed the Ninth Circuit Pattern Instructions' pattern instruction on advice of counsel, but amended it to include the Tenth Circuit's advice of counsel elements in the civil context. See Trial Tr. at 983:8-18 (Court). Counsel confirmed that the civil elements the Court had selected were the same elements as those used in criminal cases in the Tenth Circuit. See Trial Tr. at 983:19-22 (Sullivan, Linnenburger).

### 4.   Court's Final Jury Instructions.

After meeting with counsel, the Court finalized its instructions. See Court's Final Jury Instructions, filed March 10, 2023 (Doc. 132). Before reading the elemental instructions, the Court read the jury the Indictment. See Court's Final Jury Instructions at 14-16. After the Indictment, the Court gave the conspiracy instruction:

> Mr. Kearney is charged in count 1 with a violation of 18 U.S.C. § 371.
>
> This law makes it a crime to conspire to commit an offense against the
> United States.

To find Mr. Kearney guilty of this crime you must be convinced that the government has proved each of the following beyond a reasonable doubt:

> *First*:        Mr. Kearney agreed with at least one other person to violate the law.
>
> *Second*:   one of the conspirators engaged in at least one overt act furthering the conspiracy's objective.
>
> *Third*:      Mr. Kearney <u>knew</u> the essential objective of the conspiracy.
>
> *Fourth*:    Mr. Kearney <u>knowingly and voluntarily</u> participated in the conspiracy.
>
> *Fifth*:       there was interdependence among the members of the conspiracy; that is, the members, in some way or manner, intended to act together for their shared mutual benefit within the scope of the conspiracy charged.

Court's Final Jury Instructions at 17. After the Court gave the conspiracy element instruction, it gave the other instructions in the following order: (i) the instruction regarding the meaning of "knowingly;" (ii) the unanimity-of-theory instruction; (iii) the false-and-fraudulent-return element instruction; and (iv) the instruction regarding the meaning of "willfully." Court's Final Jury Instructions at 18-23.

After providing those instructions, the Court instructed the jury regarding Kearney's advice-of-counsel defense:

> One element that the government must prove beyond a reasonable doubt is that Mr. Kearney had the unlawful intent to make a false material statement on the income tax return form for calendar year 2011. Evidence that Mr. Kearney in good faith followed the advice of counsel would be inconsistent with such an unlawful intent. Unlawful intent has not been proved if Mr. Kearney, before acting, (i) requested for advice of counsel on the legality of a proposed action; (ii) made full disclosure of the relevant facts to counsel; (iii) received advice from counsel that the action to be taken will be legal; and (iv) relied in good faith on counsel's advice.

Court's Final Jury Instructions at 24.

     **5.**     <u>**Issues That Clawson and Maethner Created During Trial**</u>.

     Clawson and Maethner created issues for the Court during trial.   On the morning of Tuesday, March 7, 2023, the second full day of trial, the Court indicated to counsel and the parties that it was missing a juror, Clawson.   <u>See</u> Trial Tr. at 88:3-5 (Court).   The Court's Courtroom Deputy Clerk ("CRD") told the Court that, after the first break on the first day of trial, Clawson "indicated that he has some type of anxiety disorder and he . . . had been making eye contact with Mr. Kearney and felt a bit intimidated, and he said that he wasn't sure he could be impartial."   Trial Tr. at 88:15-19 (Rotonda).   The Court added that, at the end of the first day, the Court told its CRD to tell Clawson "I'd think about it," and to tell him to come back in the morning for the second day.   Trial Tr. at 88:21-25 (Court).   The Court then explained that Clawson had called Jury Services earlier that morning, and "said he was having a panic anxiety attack" and that "he couldn't drive."   Trial Tr. at 89:6-8 (Court).   The Court stated that it told Clawson to "take a[n] Uber."   Trial Tr. at 89:9 (Court).   The Court indicated that it would wait for Clawson to arrive, but acknowledged that "there may be a sufficient concern about him to replace him."   Trial Tr. at 89:11-13 (Court).   The Court also indicated that it was reluctant to excuse a juror and use an alternate that early into the trial.   <u>See</u> Trial Tr. at 89:13-15 (Court).   The United States agreed with the Court's position, but asked the Court's permission to wait for Clawson to arrive, "assess his condition and maybe do some sort of a checkup."   Trial Tr. at 90: 7-13 (Sullivan).   Kearney's counsel responded that, "if the simple act of seeing my client made him so nervous that he questioned his own partiality, I think I have to ask that he be excused."   Trial Tr. at 92:7-9 (Linnenburger).   Ultimately, the Court

indicated that it would proceed with Clawson for now, but excuse him later if needed.  See Trial
Clerk's Minutes at 6.

Clawson eventually arrived at the courthouse, and the Court had him come in with the rest
of the jury.  See Trial Tr. at 93:6-7 (Court).  At 8:59 a.m., testimony resumed and Clawson sat with
the rest of the jury.[4]  See Trial Clerk's Minutes at 6.  During the United States' presentation of
evidence that morning, Clawson spent most of the time with his arms crossed and eyes closed.  He
frequently put his head down with his chin to his chest.  At 10:04 a.m., the Court dismissed the
jury for a mid-morning, fifteen-minute break.  See Trial Tr. at 139:14-16 (Court); Trial Clerk's
Minutes at 6.  Outside the jury's presence, Kearney again raised the issue concerning Clawson.
See Trial Tr. at 140:3-5 (Linnenburger).  The Court explained Clawson had reported that "he needs
to see his doctor and he's not doing well."  Trial Tr. at 140:11-12 (Court).  The United States
indicated that it "like[s] the plan we're on, the course right now, checking in, and deferring [un]til
later to make a final decision."  Trial Tr. at 141:3-5 (Sullivan).  The United States expressed that
it thought "we're getting closer to the point where we might have to excuse him," but that it was
"not sure we're there yet."  Trial Tr. at 141:11-13 (Court).  Kearney rebutted that Clawson "is
having difficulty paying attention," Trial Tr. at 141:17-18 (Linnenburger), and noted that Clawson
"spent a decent amount of time after they came out this morning with his eyes closed very tight
and his face scrunched up," Trial Tr. at 141:18-21 (Linnenburger).  Kearney also asserted that
Clawson was making Kearney anxious and "hampering his ability to assist in his own defense."
Trial Tr. at 142:2-11 (Linnenburger).  Kearney asked that the Court excuse Clawson, see Trial Tr.

---

[4]The trial transcript does not reflect Clawson's demeanor on the morning of March 7, 2023,
the second day of trial.  Instead, the Court provides this limited description on the basis of its own
observations and memory.  Counsel's description of Clawson's demeanor on the record
corroborates the Court's recollection.  See Trial Tr. at 141:18-21 (Linnenburger).

at 142:18-19 (Linnenburger), and the United States agreed, see Trial Tr. at 142:20-22 (Sullivan).

The Court asked its CRD not to have Clawson line up with the other jurors and to excuse him.  See

Trial Tr. at 143:8-11 (Court).  Clawson did not re-enter the courtroom after the mid-morning break.

See Trial Tr. at 143:8-11 (Court); Trial Clerk's Minutes at 7.

      The following day, Wednesday, March 8, 2023, Fiser testified.  See Trial Clerk's Minutes

at 9.  At several points throughout his testimony, Fiser mentioned Yearout, one of Kearney's

former business associates.[5]  See, e.g., Trial Tr. at 632:18-23 (Fiser); id. at 634:22-635:19 (Fiser);

id. at 637:5-6 (Fiser); id. at 645:13-18 (Fiser).  Later in the day, the Court received a note from

Maethner.  See Trial Tr. at 594:1-2 (Court).  The note reads:

>       I wanted to inform the Court that I know a Kevin Yearout (KY) who was
> identified as a partner of Victor Kearney for VK LANO.  My relationship is not
> personal but only in a professional setting.  I have met with KY in person twice to
> discuss the possibility of leasing space on behalf of my employer at the Max Q
> development near Kirtland AFB.  I don't believe this will affect my ability to be
> fair and impartial in the case.  Please let me know if you have questions or require
> further information . . . .

Note (marked as Exhibit 3 to the Clerk's Minutes), filed March 6, 2023 (Doc. 142-1 at

3)("Maethner Note").  Neither the United States nor Kearney commented on the Maethner Note.

See Trial Tr. at 594:16-595:23 (Court, Rotonda, Brawley)(discussing matters other than the

Maethner Note, including jury instructions and scheduling).  At the conclusion of the trial, the jury

found Kearney guilty on both counts.  See Verdict (dated March 10, 2023), filed March 10, 2023

(Doc. 131).

---

[5]Although Fiser mentioned Yearout during his testimony, Yearout did not testify at trial.
See Trial Clerk's Minutes at 4-19 (summarizing the witnesses who testified at trial, which does
not include Yearout).

6.      **Motion and Related Briefing**.

Two weeks later, Kearney filed the Motion.  See Motion at 1.  In the Motion, Kearney asks the Court to vacate the Verdict and "order a new trial for Mr. Kearney" for four separate reasons. Motion at 1.  See id. at 1-9.  First, Kearney asserts that the Court's conspiracy instruction misstates a Klein conspiracy's elements.  See Motion at 1-4.  Kearney contends that the Indictment "charged a *Klein* conspiracy."  Motion at 1 (citing Indictment at 1-2; Klein, 247 F.2d at 908).  Kearney emphasizes that the First Kearney Proposed Instructions "indicated a verdict of guilty as to Count 1 [under 18 U.S.C. § 371] required a finding of specific intent to defraud the IRS."  Motion at 1 (citing First Kearney Proposed Instructions at 3).  He underscores that the First Kearney Proposed Instructions "cited to cases that discussed the necessary intent to defraud element of tax offenses and included elements of a *Klein* conspiracy . . . ."  Motion at 2 (citing First Kearney Proposed Instructions at 3; United States v. Adkinson, 158 F.3d at 1147; Klein, 247 F.2d at 908; Cheek v. United States, 498 U.S. at 192).  "Counsel further indicated at a hearing before this Court that Mr. Kearney's proposed instruction sought to include the proper elements and definition of fraudulent intent related to a *Klein* conspiracy charge."  Motion at 2.  Kearney asserts that the Court's Final Jury Instructions "did not discuss defrauding the United States as was charged nor did it require the jury to find beyond a reasonable doubt that Mr. Kearney conspired to defraud the United States . . . ."  Motion at 2.  Kearney contends that the Court's Final Jury Instructions were "lacking th[e] essential element of a *Klein* conspiracy in that [they] did not require the jury to find an intent to defraud and/or to impede or obstruct the IRS and defeat its lawful function."  Motion at 2 (citing United States v. Adkinson, 158 F.3d at 1154; United States v. Burks, 746 F. App'x 191, 198-99 (4th Cir. 2018)).  According to Kearney, therefore, the Court "did not correctly state the *mens rea* requirement of the specific 18 U.S.C. § 371 charge presented to the jury."  Motion at 2.  He also

adds that the Verdict Form "did not . . . clarify or require that any overt act needed to be specifically sound to have been committed with an intent to defraud the government and/or impede or obstruct the IRS and defeat its lawful function."  Motion at 3.

Second, Kearney protests that the Court's advice-of-counsel instruction gave the jurors the false impression that Kearney's advice-of-counsel defense applied only to one count, and not to both counts.  See Motion at 3-4.  Kearney asserts that "the Court's final instructions included a good faith reliance instruction, but was limited to 'the income tax return form for calendar year 2011,'" such that it was limited to the § 7206(2) charge, and did not include the § 371 charge. Motion at 3.  Kearney highlights that the advice-of-counsel defense is available for a § 371 conspiracy charge.  See Motion at 3 (citing United States v. Musgrave, 444 F.2d 755 (5th Cir. 1971)).

Third, Kearney avers that he is entitled to a new trial, because the Court waited too long to excuse Clawson after Clawson professed that Kearney made him anxious.  See Motion at 5-6. Kearney explains that on the morning of the second day of trial, the Court and the parties learned that Clawson reported that he was "in the midst of extreme anxiety resulting from the site of the Defendant."  Motion at 5.  Kearney states that Clawson professed to be unable to come to the courthouse on account of his anxiety, but that the Court "required [the juror] to obtain alternative transportation and appear at the courthouse."  Motion at 5.  Kearney contends that the Court "made" Clawson "sit for testimony with the remainder of the jury," and that he displayed distressed body language.  Motion at 5.  Kearney asserts that, "[a]s a result of the juror's anxiety and distress," he "began to suffer extreme anxiety and distress," which prevented him from assisting in his own defense.  Motion at 5.  Kearney acknowledges that the Court ultimately excused Clawson, but that,

"[i]n the interim, the remainder of the jury was exposed to the biased juror and the extreme manifestations of the tremendous anxiety and panic caused in this juror . . . ."  Motion at 5-6.

Finally, Kearney contends that he is entitled to a new trial, because Maethner had a prior business relationship with Yearout, one of Kearney's former business associates.  See Motion at 6.  Kearney highlights that in the Maethner Note, Maethner referred to Yearout as "KY," which, according to Kearney, is a "telling sign of closeness between this juror and Mr. Yearout."  Motion at 6 (citing Maethner Note at 1.).  Kearney also asserts that Maethner "became the foreperson of the jury."[6]  Motion at 6.

Kearney concludes by arguing that, taken together, these four issues "combined to create fundamental unfairness as to Defendant to justify granting this motion for new trial."  Motion at 7 (citing United States v. Rivera, 900 F.2d 1462, 1477 (10th Cir. 1990)).  Kearney adds that the Court's denial of Kearney's request to continue the trial "enhanced these fundamental unfairness aspects," because it forced Kearney to review "thousands of pages of Rule 16/*Brady* material on the eve of trial."  Motion at 7.  Finally, Kearney adds that he "anticipates the potential for additional grounds for a new trial" and asks the Court for a twenty-one-day extension to file an additional motion for a new trial.  Motion at 8.

The United States responds to the Motion.  See United States' Response in Opposition to Defendant's Motion for a New Trial, filed April 5, 2023 (Doc. 143)("Motion Response").  The United States explains that, to convict Kearney under § 371, it had to prove "(1) there was an agreement to violate the law, (2) the defendant knew the essential objective of the conspiracy,

---

[6]Contrary to Kearney's suggestion, Maether was not the jury's foreperson.  The unredacted Verdict, filed March 10, 2023 (Doc. 130)(filed as Court Only)("Unredacted Verdict") indicates that Joseph Corbin was the jury's foreperson.  See Unredacted Verdict at 2.

(3) the defendant knowingly and voluntarily participated in the conspiracy, (4) an overt act was committed in furtherance of the conspiracy, and (5) the coconspirators were interdependent." Motion Response at 3 (quoting United States v. Cooper, 652 F.3d 1104, 1115 (10th Cir. 2011)). The United States asserts that "[a] conspiracy to defeat the IRS' lawful function and victimize the IRS is known as a Klein conspiracy."  Motion Response at 4 (quoting United States v. Tilga, 824 F. Supp. 2d 1295, 1301 n.8 (D.N.M. 2011)(Browning, J.)(alterations in Motion Response, but not in United States v. Tilga).  "In charging a *Klein* conspiracy, the prosecution must 'allege and prove there was an agreement whose purpose was to impede the IRS . . . and that each defendant knowingly participated in that conspiracy.'"  Motion Response at 4 (quoting United States v. Tilga, 824 F. Supp. 2d at 1301 n.8)(alterations in Motion Response, but not in United States v. Tilga).

"Based on th[ose] standards," the United States asks the Court to "deny Defendant's motion for a new trial."  Motion Response at 4.  The United States emphasizes that the Court's instruction on § 371 "track[s]" the Tenth Circuit's pattern jury instruction on § 371.  Motion Response at 2.  The United States adds that "the court's instructions to a jury should be considered as a whole," Motion at Response at 5 (citing United States v. Pinson, 542 F.3d 822, 831 (10th Cir. 2008), and that other instructions in the Court's Final Jury Instruction "gave the jury additional information about the specifics of the conspiracy as alleged in the indictment," including "that the object of the conspiracy was 'to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful Government function of the Internal Revenue Service . . . .'" Motion Response at 2 (quoting Court's Final Jury Instructions at 14).  The United States underscores that the Court's § 371 instruction -- plus the Court's reading of the Indictment and instructions regarding manner, means, and overt acts -- gave the jury a "clear[] picture of what the indictment alleged in terms of a *Klein* conspiracy."  Motion Response at 6.  The United States

contends that the Court's instructions, taken together, "accurately informed the jury of the governing law, including the specific requirements for proving a *Klein* conspiracy."  Motion Response at 5.  In so arguing, the United States rebuffs Kearney's suggestion that United States v. Adkinson establishes "specific pleading and proof requirements for a *Klein* conspiracy."  Motion Response at 5 (citing United States v. Adkinson, 158 F.3d at 1153).  "Rather, *Adkinson* identifies substantially the same elements as *Cooper*, . . . except for the interdependence requirement, which is specific to the Tenth Circuit."  Motion Response at 5 (citing United States v. Adkinson, 158 F.3d at 1153; United States v. Cooper, 652 F.3d at 1115).

Next, the United States contends that the Court's decision not to excuse Clawson more quickly does not merit a new trial.  See Motion Response at 6-7.  The United States asserts that Kearney "did not develop a factual record" to show how "the excused juror's issues interfered with the ability of the other jurors to render a fair and impartial verdict."  Motion Response at 7.  The United States adds that Kearney's claim that Clawson's anxiety prevented Kearney from assisting in his own defense is "dubious."  Motion Response at 7.

Similarly, the United States rejects Kearney's argument that the Court's decision not to excuse Maethner also warrants a new trial.  See Motion Response at 7.  The United States avers that, "[h]ere again, Defendant failed to make a sufficient inquiry at trial," and that his argument is premised mostly on "information outside the record, which the jury would not necessarily know."  Motion Response at 7.  Accordingly, the United States asserts that "[t]his second juror provides no grounds for relief."  Motion Response at 7.

Kearney replies in support of his Motion.  See Reply in Support of Motion for New Trial, filed April 19, 2023 (Doc. 146)("Motion Reply").  First, Kearney contends that it is undisputed that the United States charged a Klein conspiracy and that the United States must show that

Kearney had "a specific intent 'to impede the IRS' and 'obstruct the government's knowledge and collection of revenue due'" to prove the <u>Klein</u> conspiracy.  Motion Reply at 2 (quoting Motion Response at 4 (citing <u>United States v. Tilga</u>, 824 F. Supp. 2d at 1295)).  Kearney contends that <u>Klein</u> conspiracies involve a "specific intent element," and that "the Government was required to prove [that element], yet it was not contained as an element in the instructions to the jury."  Motion Reply at 2 (footnote omitted).  Kearney asserts that the Court's recitation of the Indictment does not cure the deficiencies in the § 371 element instruction, because the Court also instructed the jury that the Indictment is "simply the description of the charge made by the government."  Motion Reply at 2 (citing Court's Final Jury Instructions at 2).  Kearney emphasizes that, if anything, the Indictment's language regarding defrauding the IRS indicates that such language "becomes an essential and delimiting part of the charge itself," and that the "jury instructions . . . must comport with those particulars."  Motion Reply at 3 (quoting <u>United States v. Miller</u>, 891 F.2d 1220, 1235 (10th Cir. 2018)).  Kearney contends that it follows that <u>United States v. Miller</u> "require[s] the jury to be instructed specifically on the theory in the indictment and the mens rea required to support a <u>Klein</u> conspiracy."  Motion Reply at 3.  Kearney avers that the Court should have instructed the jury that it was required to find beyond a reasonable doubt that Kearney intended to "impede the IRS," and to "obstruct the government's knowledge and collection of revenue due."  Motion Reply at 4.

   **7.    <u>May 30, 2023, Hearing</u>.**

   The Court held a hearing on the Motion.  <u>See</u> May 30 Clerk's Minutes at 1.  The Court permitted Kearney to argue in support of his Motion.  <u>See</u> Draft Transcript of Hearing at 2:19-21

(taken May 30, 2023)("May 30 Tr.")(Court).[7]  Kearney began by noting that, in his Motion, he requests twenty-one additional days to "conduct[] further investigation" into grounds for a new trial.  May 30 Tr. at 3:6-12 (Linnenburger)(referencing Motion at 8).  Kearney indicated that he no longer has a "good faith basis" to request time for further investigation, and "withdr[e]w that request."  May 30 Tr. at 3:15-16 (Linnenburger).

Next, Kearney addressed the issues concerning Clawson and Maethner, starting with Clawson.  See May 30 Tr. at 4:1-3 (Linnenburger).  Kearney reiterated that Clawson's visible display of anxiety distracted Kearney during the second day of trial, and caused "difficulty in communication during the trial itself," because Kearney was "solely and intently" focused on Clawson.  May 30 Tr. at 4:14-17 (Linnenburger).  Kearney then addressed Maethner.  See May 30 Tr. at 5:5-7 (Linnenburger).  Kearney underscored that Maethner referred to Yearout using a nickname -- "KY" -- and that Maethner had been involved in prior business dealings with Yearout. See May 30 Tr. at 5:7-18 (Linnenburger).

The Court allowed the United States to respond to Kearney's arguments regarding the two jurors.  See May 30 Tr. at 6:1-3 (Court).  The United States contended that "nothing about the two jurors that the defense has highlighted . . . warrants a new trial."  May 30 Tr. at 6:9-11 (Brawley). The United States highlighted that the issues with Clawson occurred on "Tuesday morning . . . , the first day of testimony," but that the Court excused him "before anyone even had lunch that day," and that the trial continued and "proceeded through the entire week."  May 30 Tr. at 6:14-19 (Brawley).  The United States emphasized that Clawson "was excused very early on in the

---

[7]The Court's citations to the May 30 Tr. refer to the Court Reporter's original, unedited version.  Any citations to the final transcript may contain slightly different page and/or line numbers.

testimony," that he "wasn't involved in any of the deliberations," and that there is "absolutely no reason to believe, no evidence at all, that any of the other jurors were impacted by him . . . ." May 30 Tr. at 6:2125 (Brawley).  The United States acknowledged that Kearney states that Clawson distracted him, but the United States averred that mere distraction is "not the standard" for granting a new trial.  May 30 Tr. at 7:3-9 (Brawley).

The United States then addressed Maethner.  See May 30 Tr. at 7:10 (Brawley).  The United States underscored that Maethner was candid and "forthcoming" when he disclosed his prior business dealings with Yearout.  May 30 Tr. at 7:10-15 (Brawley).  The United States remined the Court that Maethner's relationship with Yearout was a "business relationship," and that Maethner "never made any statements" that indicate his dealings with Yearout would impact his ability to be "fair and impartial toward Mr. Kearney."  May 30 Tr. at 7:15-21 (Brawley).

The Court indicated that it is "not going to grant a new trial on the basis of the juror issues." May 30 Tr. at 8:15-16 (Court).  Regarding Clawson, the Court stated that "it's not the first time in my life that I've had a juror . . . freak out," and that such situations are "not uncommon."  May 30 Tr. at 8:19-21 (Court).  The Court indicated that Clawson's panic is not "a good basis for a new trial."  May 30 Tr. at 9:4 (Court).  Similarly, the Court stated that the issues concerning Maethner are largely speculative.  See May 30 Tr. at 9:5 (Court).  The Court elaborated that it does not know how Maethner thinks of Yearout and that "it could go either way," but that the Court doesn't "think it has any impact," because Yearout "wasn't a big factor in the trial."  May 30 Tr. at 9:5-9 (Court).

The Court then heard Kearney's argument regarding the jury instructions.  See May 30 Tr. at 9:11-13 (Court).  Kearney began by clarifying that his primary issue is with the conspiracy instruction.  See May 30 Tr. at 9:21-10:22 (Court, Linnenburger).  The Court noted that it used the Tenth Circuit's pattern jury instruction regarding conspiracy, see May 30 Tr. at 10:8-10 (Court),

and asked Kearney if it is his position that the Court needs to modify the Tenth Circuit's pattern conspiracy instruction in Klein conspiracy cases, see May 30 Tr. at 12:8-11 (Court).  Kearney responded in the affirmative.  See May 30 Tr. at 12:12 (Linnenburger).  The Court asked Kearney how he would "modify the pattern instruction" for Klein conspiracy cases.  May 30 Tr. at 12:13-14 (Court).  Kearney responded that the Court should modify the instructions to reflect that the "objective of the conspiracy was to defraud the IRS."  May 30 Tr. at 13:1 (Linnenburger). Kearney added that the mens rea element must reflect "that specific intent to defraud the IRS."  May 30 Tr. at 13:6-14 (Linnenburger).  The Court stated that "it might be helpful" if Kearney submitted something to the Court that reflects the language he would have preferred, because the Court is "not exactly sure . . . what you want me to do differently."  May 30 Tr. at 13:18-24 (Court).  The Court asked if there is any guidance from the Tenth Circuit on jury instructions in Klein conspiracy cases.  See May 30 Tr. at 14:4-6 (Court).  Kearney responded that there is not guidance from the Tenth Circuit, but noted that the Court's prior decision in United States v. Tilga emphasizes that Klein conspiracies involve "a requirement of specific intent."  May 30 Tr. at 14:7-19 (Linnenburger)(citing United States v. Tilga, 824 F. Supp. 2d 1295, 1301 n.8).  Kearney added that his advice-of-counsel defense would have negated that specific intent, but that "the way the instructions were provided" gave the jury the false impression that the advice-of-counsel instruction did not apply to the conspiracy count.  May 30 Tr. at 15:1-4 (Linnenburger).  Kearney reiterated that "the government charged a very specific type of conspiracy here," and that, under United States v. Miller, "the jury instructions have to follow the indictment."  May 30 Tr. at 16:1-4 (Linnenburger)(citing United States v. Miller, 891 F.2d at 1235).  Kearney added that reading the jury instructions as a whole does not "cure[]" his problems with the jury instructions, as the United States suggests it should.  May 30 Tr. at 16:18-22 (Linnenburger).

Next, the Court heard from the United States regarding the jury instructions. See May 30 Tr. at 18:14-15 (Court). The United States highlighted that "what's important to remember is the instruction we gave the jury is the pattern instruction that the Tenth Circuit has sanctioned. It followed it and it was correct." May 30 Tr. at 19:21-24 (Brawley). The United States emphasized that the Court's indictment instruction -- the instruction which the Court gave immediately before its conspiracy instruction -- "specifically says that Mr. Kearney and Mr. Fiser conspired to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful governmental function of the Internal Revenue Service . . . ." May 30 Tr. at 20:6-12 (Brawley)(citing Court's Final Jury Instructions at 14). The United States added that Kearney has not invoked any caselaw "that specifically says this instruction is wrong in this type of case and that's because there isn't any." May 30 Tr. at 23:22-24 (Brawley). The Court asked the United States if it had consulted the appellate lawyers in its office. See May 30 Tr. at 24:3-5 (Court). The United States replied that it had not, but that it would consult its appellate lawyers. See May 30 Tr. at 24:6 (Brawley).

The Court gave Kearney the final word on his Motion. See May 30 Tr. at 25:7-8 (Court). Kearney gestured to United States v. Bedford, 536 F.3d 1148 (10th Cir. 2008), and argued that it establishes that the United States "has to prove what the necessary specific intent is . . . for the underlying offense." May 30 Tr. at 25:13-22 (Linnenburger). The Court asked Kearney whether he had preserved his argument regarding the conspiracy instruction. See May 30 Tr. at 26:23-25 (Court). Kearney responded that he preserved his argument, because the First Kearney Proposed Instructions "included the intent to defraud the IRS language." May 30 Tr. at 27:6-10 (Linnenburger)(citing First Kearney Proposed Instructions at 3). The Court stated that it does not "recall anybody using the word Klein conspiracy or anything like that at the trial." May 30 Tr. at

27:20-22 (Court). Kearney conceded that he had not reviewed the entire trial transcript, but asserted that he recalled "making some sort of statement along those lines." May 30 Tr. at 27:25-28:1 (Linnenburger). The Court asked Kearney, when he submits his proposed instruction language, to indicate where he "alerted me to the fact that we had a Klein conspiracy and needed to deviate from the Tenth Circuit pattern instruction." May 30 Tr. at 28:23-25 (Court). The Court asked the United States if it thinks Kearney preserved the Klein conspiracy issue. See May 30 Tr. at 29:3-5 (Court). The United States responded that Kearney did not preserve the issue and that it does not "recall a Klein conspiracy ever being raised at trial at all." May 30 Tr. at 29:6-10 (Brawley).

8.    **Post-Hearing Submissions.**

The Court waited for the parties' post-hearing submissions, but did not receive anything by the last week of June, 2023. Accordingly, on June 26, 2023, the Court issued the following Minute Order:

> On May 30, 2023, the Court held a hearing on the Motion for New Trial and for Extension of Time to Submit Supplemental Authority, filed March 24, 2023 (Doc. 141)("Motion"). At the hearing, the Court ordered Defendant Victor Kearney to submit: (i) the language he would have preferred the Court to have used in its Conspiracy element instruction; and (ii) citations to the docket or trial transcript that show how and where Kearney raised his Klein conspiracy argument before or during trial. The Court also ordered the United States to consult its appellate lawyers and submit a letter to the Court addressing: (i) whether the appellate lawyers are prepared to defend the Court's Conspiracy instruction on appeal; and (ii) whether they would confess error on appeal. The Court permitted the United States to make its submission after Kearney makes his submission. To date, the Court has not received anything responsive from either party. The sentencing hearing is set for July 11, 2023, and the Court has begun its work on its Memorandum Opinion and Order on the Motion and would like the parties to make their submissions. Accordingly, the Court orders Kearney to make his submission no later than Thursday, June 29, 2023, and the United States to respond no later than Monday, July 3, 2023.

Minute Order, filed June 26, 2023 (Doc. 165)(text-only entry).

On June 29, 2023, Kearney submitted the Letter from Kearney to Court (Doc. 167)("Kearney Submission").  In the Kearney Submission, Kearney first addresses the waiver issue.  See Kearney Submission at 1-2.  He asserts:

> Defendant submitted proposed instructions as to the elements of the charged offenses prior to trial on February 23, 2023.  (Doc. 97).  The proposed instructions included specific direction on the unique mens rea elements of tax fraud offenses, including conspiracy and the need for a finding of an "intent to defraud the I[nternal] R[evenue] S[ervice]."  (Doc. 97, p. 3).  Furthermore, said proposed instructions cited specific cases that addressed the unique mens rea elements of tax offenses, including *Cheek v. United States*, 498 U.S. 192 (1991) and *United States v. Klein*, 247 F.2d 908 (2nd Cir. 1957).  (Doc. 97, pp. 3-4).  This was in addition to the language of the Indictment which specifically followed a *Klein* conspiracy charge.

> Counsel also made arguments as to the necessity of proof of specific intent in the context of a tax fraud prosecution such as this on multiple occasions.  This included argument that the Government must prove a *Klein* conspiracy as charged in the Indictment, *see* 3-9-23 Tr., 883:17, 24-25, and that the defense's proposed instructions sought to address the intent requirements of tax offenses.  *See* 3-9-23 Tr., 982:10-14.  We submit this properly preserved the issues for consideration prior to the jury being charged.  Regardless, as noted in the Motion for New Trial, the jury instructions as given permitted the jury to convict Defendant of a conspiracy far broader than that charged in the Indictment and amounted to plain error.  (*See* Doc. 141, pp. 3-4).

Kearney Submission at 1-2 (alterations in original)(footnote omitted).

Next, Kearney provides the language he would have liked the Court to use in its conspiracy element instruction.  See Kearney Submission at 2-3.  He submits that the conspiracy instruction he proposed in the First Kearney Proposed Instructions was "appropriate."  Kearney Submission at 2.  See First Kearney Proposed Instructions at 3.  Nevertheless, he "submits the following proposal developed from" the First Kearney Proposed Instructions:

> Mr. Kearney is charged in count one of the Indictment with a violation of 18 U.S.C. § 371. This law makes it a crime to conspire to defeat the lawful function of the Internal Revenue Service of the United States.

To find Mr. Kearney guilty of this offense you must be convinced that the government proved each of the following beyond a reasonable doubt:

*First:*    Mr. Kearney knowingly entered into an agreement with another person;

*Second:*    The agreement entered into was for the specific purpose of defrauding the IRS or impeding its lawful function through dishonest means;

*Third:*    Mr. Kearney knowingly and voluntarily participated in said agreement with the specific intent to defraud the IRS or impede its lawful function through dishonest means;

*Fourth:*    Mr. Kearney and the others participating in the agreement were interdependent;

*Fifth:*    Those participating in the agreement engaged in at least one overt act furthering the intent to defraud the IRS or impede its lawful function through dishonest means.

For purposes of this instruction, "intent to defraud" means to act knowingly with the intention or purpose to deceive or cheat someone.

For purposes of this instruction, parties to an agreement are "interdependent" if they intended to act together for their shared mutual benefit within the scope of the agreement.

Kearney Submission at 2-3 (italics in original).  Kearney adds that he "would request issuance of the good faith instruction tendered by Defendant without exclusion of the *Klein* conspiracy count." Kearney Submission at 3.

The following day, the United States submitted the Letter from United States to Court, filed June 30, 2023 (Doc. 168)("United States Submission").  In the United States Submission, the United States indicates that it has consulted its appellate lawyers and "intends to defend the Count 1 conviction" against a jury instructions challenge.  United States Submission at 1.  The United States explains that "Kearney's argument is subject to plain-error review because he did

- 27 -

not raise any objection to the court's instruction before trial."  United States Submission at 1.  It

elaborates:

> Kearney's proposed instruction No. 8, the one that he evidently intended to serve
> as Count 1's instruction, confusingly referred to a violation of 21 [sic] U.S.C. 7201,
> not 18 U.S.C. 371.  It then proposed embedding intent-to-defraud within the overt
> act element, *see* Doc. 97 ("Mr. Kearney or others in the agreement engaged in at
> least one overt act furthering the intent to defraud the IRS."), before defining fraud
> and intent to defraud in a separate paragraph following the elements.  Notably, the
> instruction that Kearney now submits the Court should give in the event of a retrial,
> which locates the intent to defraud inside three separate elements, bears little
> resemblance to the one he proposed before trial.

United States Submission at 1 ([sic] in original).   The United States adds that "even if

Kearney[] . . . preserve[d]    his    objection    [to    the    Court's    proposed    conspiracy

instruction] . . . Kearney forfeited any objection . . . during the Court's conference with counsel on

the final instructions."  United States Submission at 1.  The United States reminds the Court that,

at the instructions conference it had with the parties on the fourth day of trial, Thursday, March 9,

2023, the Court asked the parties if they had objections regarding the conspiracy instruction.  See

United States Submissions at 1; Trial Tr. at 973:8-15 (Court).  The United States emphasizes that,

at the conference, Kearney merely reminded the Court that he had "submitted proposals" that

deviated from the Tenth Circuit pattern instructions and that he hoped the deviations would

"incorporate that like in the -- I think it was the chief's decision on what -- in the context of tax

fraud."  United States Submission at 1-2 (quoting Trial Tr. at 982:3-4 (Linnenburger); id. at 982:7-

14 (Linnenburger)).  The United States contends that "[n]othing about this comment . . . conveyed

to the Court the idea that Kearney objected to the lack of a fraud instruction in Count 1."  United

States Submission at 2.

Next, the United States asserts that the Court's conspiracy instruction would survive plain

error review.  See United States Submission at 2.  First, the United States asserts that "the jury

instructions were not erroneous because on the whole, they conveyed that the alleged object of the conspiracy was 'to defraud the United States for the purpose of impeding' the IRS."  United States Submission at 2 (quoting Indictment ¶ 3, at 1-2; Court's Final Jury Instructions at 14 (restating the Indictment), and citing Verdict Form at 1 (entering a guilty verdict for conspiracy "as charged in Count 1 of the Indictment")).  The United States underscores that "the instructions twice referred to the 'objective' of the conspiracy -- both in the overt act and knowledge elements -- and from the indictment, it was clear that that objective was to defraud the United States for purposes of impeding the IRS' . . . collection of income taxes."  United States Submission at 2 (no citation given for internal quotation).  The United States further contends that, even if the Court's instructions were erroneous, that "error was not plain," because "Kearney has not provided any authority establishing that repeated reference in the instructions to the conspiracy's objective, when paired with an indictment that made that objective clear, is insufficient to convey the requirements of a *Klein* conspiracy."  United States Submission at 2.  Finally, the United States avers that "any error did not affect Kearney's substantial rights because of the powerful evidence of Kearney's participation in the conspiracy with a purpose to defraud the United States by impeding the IRS's collection of income tax."  United States Submission at 2.

## LAW REGARDING MOTIONS FOR A NEW TRIAL

Rule 33 of the Federal Rules of Criminal Procedure provides:

    **(a)**    **Defendant's Motion.**  Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires.  If the case was tried without a jury, the court may take additional testimony and enter a new judgment.

    **(b)**    **Time to File.**

        **(1)**    **Newly Discovered Evidence.**  Any motion for a new trial grounded on newly discovered evidence must be filed within

3 years after the verdict or finding of guilty.  If an appeal is
pending, the court may not grant a motion for a new trial
until the appellate court remands the case.

    **(2)**    **Other Grounds.**  Any motion for a new trial grounded on
any reason other than newly discovered evidence must be
filed within 14 days after the verdict or finding of guilty.

Fed. R. Crim. P. 33 (bold in original).  Under rule 33, the district court has discretion to grant a

new trial if the interests of justice require one.  See Fed. R. Crim. P. 33(a).  See also United States

v. Quintanilla, 193 F.3d 1139, 1146 (10th Cir. 1999).  "A motion for a new trial is not," however,

"regarded with favor and should only be granted with great caution."  United States v. Sinclair,

109 F.3d 1427, 1531 (10th Cir. 1997)(citing United States v. Chatman, 994 F.2d 1510, 1518 (10th

Cir. 1997)).  "'[A] defendant may not invoke rule 33 when he or she has pled guilty.'"  United

States v. Christy, 883 F. Supp. 2d 1040, 1047 (D.N.M. 2012)(Browning, J.)(quoting United States

v. Lambert, 603 F.3d 808, 809 (10th Cir. 1979)).

    "The Tenth Circuit has further stated that when 'deciding a motion for new trial, the [trial]

court may weigh the evidence and consider the credibility of witnesses in determining whether the

verdict is contrary to the weight of the evidence such that a miscarriage of justice may have

occurred.'"  United States v. Thomas, No. 13-CR-01874 MV, 2016 WL 9819560, at *8 (D.N.M.

August 5, 2016)(Vázquez, J.)(quoting United States v. Evans, 42 F.3d 586, 593 (10th Cir. 1994)).

"'The power to grant a new trial on the ground that the verdict is against the weight of the evidence

should be invoked only in exceptional cases in which the evidence preponderates heavily against

the verdict.'"  United States v. Guzman-Martinez, No. CR 03-2118 RB, 2004 WL 7338099, at *1

(D.N.M. March 10, 2004)(Brack, J.)(quoting United States v. Mounkes, 204 F.3d 1024, 1027 (10th

Cir. 2000)).

    The Court previously has addressed motions for new trials under rule 33 in various cases.

See, e.g., United States v. Folse, No. CR 15-2485 JB, 2018 WL 6047415, at *20-22 (D.N.M. November 19, 2018)(Browning, J.)(denying a motion for a new trial and a request for additional discovery where the defendant did not produce evidence that, with additional discovery, he could show that the United States destroyed evidence and, despite having earlier had notice that alleged deficiencies might exist in the United States' evidence, he did not seek evidence of such information); United States v. Neha, No. CR 04-1677 JB, 2006 WL 4062889, at *2-4 (D.N.M. June 26, 2006)(Browning, J.)(denying a new trial motion where the defendant complained of the United States' brief references to his criminal history and of the United States' comment to the jury that the Court altered a co-conspirator's statement, and where the weight of the evidence supported the verdict).

Rule 33 permits a defendant to move for a new trial in the event of newly-discovered evidence if the defendant presents that motion within three years of the verdict of guilt.  See Fed. R. Crim. P. 33(b)(1).  Ordinarily, a defendant seeking a new trial under rule 33(b)(1) must satisfy a five-part test for newly discovered evidence that the Tenth Circuit outlined in United States v. Sinclair.  See 109 F.3d at 1531.  The defendant must show that:

> (1) the evidence was discovered after trial; (2) the failure to learn of the evidence was not caused by his own lack of diligence; (3) the new evidence is not merely impeaching; (4) the new evidence is material to the principal issues involved; and (5) the new evidence is of such a nature that in a new trial it would probably produce an acquittal.

United States v. Sinclair, 109 F.3d at 1531 (quoting United States v. Stevens, 978 F.2d 565, 570 (10th Cir. 1992).  See United States v. Quintanilla, 193 F.3d at 1147 (discussing United States v. Sinclair's rule 33 test).  See also United States v. Velarde, No. CR 98-391JB, 2008 WL 5993210, at *31-44 (D.N.M. May 16, 2008)(Browning, J.)(permitting a new trial in a sexual assault case where, after the trial, the defendant uncovered evidence that the alleged victim had accused other

individuals of sexual assault).  "Under <u>Sinclair</u>, a court cannot grant a new trial on the discovery

of new impeachment evidence."  <u>United States v. Rodella</u>, No. CR 14-2783 JB, 2015 WL 711931,

at *33 (D.N.M. February 2, 2015)(Browning, J.)(citing <u>United States v. Sinclair</u>, 109 F.3d at

1531).

## <u>LAW REGARDING THE ADEQUACY OF THE JURY INSTRUCTIONS</u>

The standard of review on appeal for timely challenges to a jury instruction is de novo, and

the Tenth Circuit reviews the instructions "to determine whether, considering the instructions as a

whole, the jury was misled."   <u>United States v. Winchell</u>, 129 F.3d 1093, 1096 (10th

Cir. 1997)(citing <u>United States v. Smith</u>, 13 F.3d 1421, 1424 (10th Cir. 1994). The Tenth Circuit

has stated that it will reverse only where there is substantial doubt the jury was fairly guided:

> If, as a whole, the instructions correctly state the law and provide the jury with an
> "intelligent, meaningful understanding of the applicable issues and standards," we
> will not reverse.  *United States v. Laughlin*, 26 F.3d 1523, 1528 (10th Cir. 1994).
> In other words, reversal is not appropriate unless we have "substantial doubt that
> the jury was fairly guided."  *United States v. Mullins*, 4 F.3d 898, 900 (10th Cir.
> 1993).

<u>United States v. Winchell</u>, 129 F.3d at 1096.   In <u>United States v. Winchell</u>, the Tenth Circuit

instructed that, rather than provide juries with a separate instruction about specific intent, the Tenth

Circuit prefers district courts provide to juries instructions informing juries of the mens rea element

for the particular offense and define each element clearly and accurately:

> [A]s we have previously noted, "instructing in terms of 'specific intent' has been
> disfavored by the courts because of the confusing and ambiguous nature of such an
> instruction."  *Laughlin*, 26 F.3d at 1527 (citing *Liparota v. United States*, 471 U.S.
> 419, 433 n. 16 . . . (1985)).   Instead, we have endorsed instructions which
> adequately "apprise the jury of the mens rea element of the offense," *id.* at 1527,
> and which "define each element of the offense clearly and accurately."  *Id.* at 1528.

United States v. Winchell, 129 F.3d at 1096-97.  "Even when the district court fails to include an element of the crime in the instruction (including a mens rea element), we still apply the harmless error rule."  United States v. Sorensen, 801 F.3d 1217, 1229 (10th Cir. 2015).

Although "[a] defendant charged with a specific-intent, federal criminal tax offense can negate the element of willfulness necessary to prove the violation, thereby providing a defense to the conduct charged, if the defendant establishes that he or she sought in good faith to comply with the relevant law," United States v. Lindsay, 184 F.3d 1138, 1140 (10th Cir. 1999)(citing Cheek v. United States, 498 U.S. at 201), "a theory of defense instruction is required only if, without the instruction, the district court's instructions were erroneous or inadequate," United States v. Bowling, 619 F.3d 1175, 1183 (10th Cir. 2010)(quoting United States v. Williams, 403 F.3d 1188, 1195 (10th Cir. 2005)).  "While a defendant is entitled to an instruction on his theory of defense where some evidence and the law supports the theory, such an instruction is not required if it would 'simply give the jury a clearer understanding of the issues.'"  United States v. Bowling, 619 F.3d at 1183-84 (quoting United States v. Williams, 403 F.3d at 1195).

In United States v. Bowling, a jury found the defendant guilty of bank fraud, a specific intent crime, and the Tenth Circuit initially reversed the defendant's conviction and remanded for a new trial, because the judge failed to include a separate good-faith defense instruction.  See United States v. Bowling, 343 F. App'x 359, 364-367 (10th Cir. 2009)(unpublished).  The Tenth Circuit reasons that, while a theory-of-defense instruction is usually required only if the instructions otherwise are erroneous or inadequate, "[i]n fraud cases . . . we treat a defendant's request for a good faith instruction with some differences.  A 'defendant is entitled to a good faith instruction when he has interposed the defense of good faith, has requested the instruction, and when there is sufficient evidence to support it.'"  United States v. Bowling, 343 F. App'x at 364-

365 (quoting United States v. Overholt, 307 F.3d 1231, 1247 (10th Cir. 2002)).  The United States

then filed a petition for rehearing en banc, asking the Tenth Circuit to review its holding in United

States v. Hopkins, 744 F.2d 716 (10th Cir.1984), which requires an additional good-faith defense

instruction if sufficient evidence supports the good-faith defense.  The Tenth Circuit, sitting by

panel, but circulating the opinion to all active members of the Tenth Circuit, grants the United

States' request and overturns United States v. Hopkins.  See United States v. Bowling, No. 08-

6184, 2009 WL 6854970, at 1 n.* (10th Cir. December 23, 2009).

In United States v. Bowling, The Tenth Circuit explains its reasoning for departing from

its decision in United States v. Hopkins requiring a separate good-faith defense instruction in bank

fraud cases:

> [W]ith the unanimous concurrence of all our active judges, [] our prior decision in
> *United States v. Hopkins*, 744 F.2d 716 (10th Cir. 1984) (en banc) is overruled for
> two reasons.  First, in the twenty-five years since we issued Hopkins, every one of
> our sister circuits has come to reject the idea that district courts must give a separate
> "good faith" jury instruction in fraud cases.  As they have explained, and we agree,
> a separate good faith instruction is not necessary "because a finding of the intent to
> defraud . . . necessarily implies that there was no good faith."  *United States v.
> Chavis*, 461 F.3d 1201, 1209 n.1 (10th Cir. 2006)(cataloguing the views of every
> other circuit).  Second, while we indicated in Hopkins that failure to give a good
> faith instruction was per se reversible error, the Supreme Court has since explained
> that a "trial court's failure to instruct a jury on all of the statutory elements of an
> offense is subject to harmless-error analysis."  *Mitchell v. Esparza*, 540 U.S. 12,
> 16 . . . (2003)(per curiam); *See also Neder v. United States*, 527 U.S. 1,
> 9 . . . (1999)("[A]n instruction that omits an element of the offense does not
> necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for
> determining guilt or innocence."); Fed. R. Crim. P. 52(a).

2009 WL 6854970, at *1 n.*.

## LAW REGARDING CONSPIRACY

Section 371 of Title 18 of the United States Code is the general federal conspiracy statute.

It provides:

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.
>
> If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor.

18 U.S.C. § 371.  In other words, the plain language of 18 U.S.C. § 371 encompasses two types of conspiracies: (i) conspiracies "to commit any offense against the United States"; and (ii) conspiracies to "defraud the United States."  18 U.S.C. § 371.  The Court elaborates on both conspiracies in turn.

**1.      Conspiracies to Commit Any Offense Against the United States.**

To prove a conspiracy to commit an offense against the United States -- <u>i.e.</u> a conspiracy to commit some underlying offense -- the United States must show:

> (1) that two or more people agreed to violate the law, (2) that the defendant knew at least the essential objectives of the conspiracy, (3) that the defendant knowingly and voluntarily became a part of it, and (4) that the alleged co-conspirators were interdependent . . . .   A single conspiracy does not exist solely because many individuals deal with a common central player.  What is required is a shared single criminal objective, not just similar or parallel objectives between similarly situated people.  On the other hand, a defendant need not have knowledge of all the details or all the members of the conspiracy and may play only a minor role in the conspiracy.  The government need only prove by direct or circumstantial evidence that the defendant knew at least the essential objectives of the conspiracy and the defendant knowingly and voluntarily became part of it.

<u>United States v. Small</u>, 423 F.3d at 1182-83.  A conspiracy is not a collection of various separate and distinct events, but rather is "the prototypical continuing offense."  <u>United States v. Acosta-Gallardo</u>, 656 F.3d 1109, 1122 (10th Cir. 2011)(quoting <u>United States v. Jaynes</u>, 75 F.3d 1493, 1505 (10th Cir. 1996)).  "A conspirator is only liable for the acts of co-conspirators until the conspiracy accomplished its goals or that conspirator withdraws."  <u>United States v. Thornburgh</u>,

645 F.3d 1197, 1204 (10th Cir. 2011)(quoting United States v. Cherry, 217 F.3d 811, 817 (10th Cir. 2000)).

**2.      Conspiracies to Defraud the United States.**

Section 371 of Title 18 of the United States Code also penalizes conspiracies to "defraud the United States," i.e., conspiracies to cheat the federal government. 18 U.S.C. § 371. All of the United States Courts of Appeals besides the United States Court of Appeals for the Federal Circuit have weighed in on the elements of a conspiracy under § 371's "defraud the United States" prong, but there is variation among them. 18 U.S.C. § 371. For example, the Ninth Circuit establishes that, to prove a conspiracy to defraud the United States, "the government need only show that (1) [the defendant] entered into an agreement (2) to obstruct a lawful function of the government (3) by deceitful or dishonest means and (4) at least one overt act in furtherance of the conspiracy." United States v. Caldwell, 989 F.2d 1056, 1059 (9th Cir. 1993). See United States v. Ballistrea, 101 F.3d 827, 832 (2d Cir. 1996)(endorsing the elements that the Ninth Circuit provides in United States v. Caldwell). By contrast, the United States Courts of Appeals for the Fifth Circuit, Eleventh Circuit, and the District of Columbia assert that the elements of a conspiracy to defraud the United States are: "(1) an agreement between two or more persons to pursue an unlawful objective, (2) the defendant's knowledge of the unlawful objective and voluntary agreement to join the conspiracy, and (3) an overt act . . . in furtherance of the . . . conspiracy." United States v. Freeman, 434 F.3d 369, 376 (5th Cir. 2005). See United States v. Cure, 804 F.2d 625, 628 (11th Cir. 1986)(same); United States v. Mellen, 393 F.3d 175, 180-81 (D.C. Cir. 2004)(same). The United States Court of Appeals for the Fourth Circuit embraces similar elements: "(1) the existence of an agreement, (2) an overt act . . . in furtherance of the objectives, and (3) an intent on the part of the conspirators to agree as well as to defraud the United States." United States v. Tedder, 801 F.2d 1437, 1446

(4th Cir. 1986).  See United States v. Shoup, 608 F.2d 950, 955-56 (3d Cir. 1979)(same).  The

United States Court of Appeals for the Sixth Circuit also embraces three similar elements: "(1) an

agreement to accomplish an illegal objective against the United States; (2) one or more overt acts

in furtherance of the illegal purpose; and (3) the intent to commit the substantive offense, i.e., to

defraud the United States."  United States v. Douglas, 398 F.3d 407, 413 (6th Cir. 2005).  See

United States v. Cyprian, 23 F.3d 1189, 1201 (7th Cir. 1994)(same).  Similarly, the United States

Court of Appeals for the First Circuit establishes that a conspiracy to defraud the United States

entails "an agreement, the unlawful objective of that agreement, and an overt act in furtherance of

the agreement," and that the unlawful objective must be to "impair[], obstruct[], or defeat[] the

lawful function of any department of the Government."  United States v. Barker Steel Co., Inc.,

985 F.2d 1123, 1128 (1st Cir. 1993).  Likewise, the United States Court of Appeals for the Eighth

Circuit instructs that "the government must show an agreement to defraud the federal government

and an act by one of more of the conspirators to effect the object of that conspiracy."  United States

v. Murphy, 957 F.2d 550, 552 (8th Cir. 1992).

In United States v. Bedford, the Tenth Circuit provides its own set of elements for

conspiracies to defraud the United States.  See 536 F.3d at 1156.  United States v. Bedford

concerned "a business called Tower Executive Resources that billed itself as an executive

recruitment business."  536 F.3d at 1152.  In reality, Tower Executive "promoted to its members

the opportunity to protect assts and enjoy tax deferral through an offshore venture."  536 F.3d at

1152.  Bedford operated a tax preparation business and worked with many Tower Executive

clients.  See 536 F.3d at 1152.  The Grand Jury indicted several individuals associated with Tower

Executive, including Bedford.  See 536 F.3d at 1151.  Specifically, the indictment charged Bedford

with one count of "conspiracy to commit two underlying crimes: 1) defrauding the United States

of America by impeding the Internal Revenue Service in its lawful efforts to collect income tax, and 2) assisting individual taxpayers in filing fraudulent tax returns in violation of 26 U.S.C. § 7206(2)."  536 F.3d at 1151.  After two trials, a jury convicted Bedford on one count of conspiracy.  See 536 F.3d at 1152.  On appeal, Bedford argued that, among other things, the indictment was insufficient because it did not list the elements of the underlying substantive offenses.  See 536 at 1156-57.  The Tenth Circuit disagreed with Bedford and establishes:

> To indict a defendant with conspiracy under § 371, the government must charge that: (1) there was an agreement to violate the law, (2) the defendant knew the essential objective of the conspiracy, (3) the defendant knowingly and voluntarily participated in the conspiracy, (4) an overt act was committed in furtherance of the conspiracy, and (5) the coconspirators were interdependent.

536 F.3d at 1156 (citing 18 U.S.C. § 371; United States v. Ailsworth, 138 F.3d 843, 850 (10th Cir. 1998); United States v. Stoner, 98 F.3d 527, 531-32 (10th Cir. 1996)).

## LAW REGARDING KLEIN CONSPIRACIES

A Klein conspiracy is one type of conspiracy to "defraud the United States."  18 U.S.C. § 371.  See 247 F.2d at 908.  A Klein conspiracy gets its name from the Second Circuit's decision in Klein.  See 247 F.2d at 908.  Before the Court can explain the Second Circuit's decision in Klein, it must first describe the two Supreme Court cases on which Klein is premised: Haas v. Henkel, 215 U.S. 461 (1910)("Haas"), and Hammerschmidt v. United States, 265 U.S. 182 (1924) ("Hammerschmidt").

In Haas, Haas and his associates conspired to submit a false cotton crop report to the Department of Agriculture's Bureau of Statistics.  See Haas, 215 U.S. at 472.  The United States indicted the defendants and alleged that "these three defendants conspired to defraud the United States by secretly obtaining information from" a department employee.  Haas, 215 U.S. at 477.  The indictment further alleged that Haas, "in violation of his official duty," would "give out

[the information] secretly to his co-conspirators." Haas, 215 U.S. at 477. Notably, the indictment did not allege that the United States suffered a financial loss as a result of the scheme, but rather that the falsehoods "greatly affect[ed] the market price of the crop." Haas, 215 U.S. at 477-78. Haas and his co-defendants challenged the indictment on the grounds that it "[did] not charge any offense against the United States," as § 371 requires, because it did not allege a financial loss. Haas, 215 U.S. at 476. In Haas, the Supreme Court disagrees with the defendants and determines that § 371 is "broad enough in its terms to include any conspiracy for the purpose of impairing, obstructing, or defeating the lawful function of any department of government." Haas, 215 U.S. at 479. The Supreme Court reasons that the defendants are guilty of conspiracy against the United States, because they "defraud[ed] the United States by defeating, obstructing, and impairing it in the exercise of its governmental function in the regular and official duty of publicly promulgating fair, impartial, and accurate reports concerning the cotton crop." Haas, 215 U.S. at 478.

Similarly, in Hammerschmidt, the Supreme Court confronted a conspiracy to create and distribute "handbills, dodgers, and other matter intended and designed to counsel, advise, and procure persons subject to the Selective Act to refuse to obey it." 265 U.S. at 185. The indictment was "based[] on the language in Haas," and alleged that Hammerschmidt had conspired to "defraud the United States." 265 U.S. at 185. Hammerschmidt moved to dismiss the indictment, but the trial court denied his motion. See 265 U.S. at 185. On appeal, the Supreme Court explains:

> To conspire to defraud the United States means primarily to cheat the government out of property or money, but it also means to interfere with or obstruct one of its lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest. It is not necessary that the government shall be subjected to property or pecuniary loss by the fraud, but only that its legitimate official action and purpose shall be defeated by misrepresentation, chicane, or the overreaching of those charged with carrying out the governmental intention. It is true that words 'to defraud' as used in some statutes have been given a wide meaning, wider than their ordinary scope. They usually signify the deprivation of something of value

by trick, deceit, chicane, or overreaching.  They do not extend to theft by violence.
They refer rather to wronging one in his property rights by dishonest methods or
schemes.  One would not class robbery or burglary among frauds . . . .  [The
Supreme Court's prior conspiracy to defraud the United States caselaw] cannot be
used as authority to include within the legal definition of a conspiracy to defraud
the United States a mere open defiance of the governmental purpose to enforce a
law by urging persons subject to it to disobey it.

265 U.S. at 188-89.  In other words, the Supreme Court concludes that Hammerschmidt could not

be convicted of conspiring to defraud the United States where the United States did not allege that

he had engaged in "trick[ery], deceit, chicane, or overreaching."  265 U.S. at 188.

The Second Circuit builds on Haas and Hammerschmidt in Klein.  See 247 F.2d at 916.  In

Klein, Klein and his associates conspired to "run[] an immense whiskey selling business in a

fashion calculated to minimize the amount of United States income tax they would have to pay."

247 F.2d at 911.  Over the course of the conspiracy, Klein and his co-conspirators incorporated

several businesses in several countries, and used "intercorporate manipulation and

complexity . . . to obtain tax advantages."  247 F.2d at 911-12.  More specifically, Klein had his

associates take out bank drafts to help conceal the scheme's profits from the Internal Revenue

Service.  See 247 F.2d at 912-13.  Nevertheless, the Internal Revenue Service became suspicious,

and "Klein's long difficulties with the United States Treasury began."  247 F.2d at 913.  As part

of its investigation, the Internal Revenue Service sent Klein interrogatories.  See 247 F.2d at 913.

Klein provided false answers in response to the interrogatories.  See 247 F.2d at 913.

The Grand Jury indicted Klein and his co-conspirators on multiple counts, including

conspiracy and several, underlying substantive offenses.  See 247 F.2d at 910.  As the case

unfolded, Klein made several "pretrial attacks on the indictment."  247 F.3d at 910.  Although

many of "these [attacks] were unsuccessful," they compelled the United States to supersede the

indictment.  See 247 F.2d at 910.  By the time the case proceeded to trial, there was only one count

at issue -- conspiracy -- and no accompanying substantive offenses.   See 247 F.2d at 910. Specifically, the superseding indictment alleged that Klein and his associates had conspired "to defraud the United States by impeding, impairing, obstructing, and defeating the lawful function of the Department of the Treasury in the collection of the revenue; to wit, income taxes." Klein, 247 F.2d at 915 (quoting the underlying indictment, but not providing a citation for the indictment). The Second Circuit notes that, based on the indictment's language, "[i]t is clear . . . that the indictment is framed to make a general charge of impeding and obstructing the Treasury Department in the collection of income taxes . . . rather than as substitute and complete allegations of the substantive crime itself." 247 F.2d at 916.   Klein objected to the "generality of the allegation relied upon" and filed several motions for bills of particulars, which the trial judge denied.   247 F.2d at 917.

On review, the Second Circuit upholds the conspiracy charge.   See 247 F.2d at 916-17. The Second Circuit explains that "we find no merit in the oft-repeated contentions that the prosecution and the trial court 'expanded' the [conspiracy] count in question . . . ."   247 F.2d at 916 (no citation given for internal quotation).   The Second Circuit elaborates:

> [M]ere failure to disclose income would not be sufficient to show the crime charged of defrauding the United States under 18 U.S.C. § 371.   The statute, however, not only includes the cheating of the Government out of property or money, but 'also means to interfere with or obstruct one of its lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest.'

Klein, 247 F.2d at 916 (quoting Hammerschmidt, 265 U.S. at 188).   The Second Circuit adds that, "under the circumstances here disclosed, the defendants were fully and adequately informed by the indictment of the crime which they were called upon to answer," and that the conspiracy count was permissible as charged.   247 F.2d at 918.

In short, a Klein conspiracy is a "section 371 conspiracy where the victim is the IRS and the objective is to defeat its lawful functioning."  United States v. Adkinson, 158 F.3d at 1154. Ordinarily, "failure to disclose income . . . without more" does not amount to a Klein conspiracy. United States v. McKee, 506 F.3d 225, 239 (3d Cir. 2007).  Instead, the United States must show that "there was an *agreement* whose purpose was to *impede the IRS* (the conspiracy), and that each defendant *knowingly participated* in that conspiracy."  United States v. Adkinson, 158 F.3d at 1154 (emphasis in original).

Since the Second Circuit's decision in Klein, Klein conspiracies have become the subject of some controversy.  For example, in United States v. Coplan, 703 F.3d 46 (2d Cir. 2012) ("Coplan"), the Second Circuit confronted a challenge to the Klein conspiracy doctrine.  See 703 F.3d at 59-62.  In Coplan, the United States charged four partners at an international accounting firm after the partners designed and implemented tax shelters for their clients.  See 703 F.3d at 54. More specifically, the United States alleged that the partners engaged in a Klein conspiracy.  See 703 F.3d at 57.  A jury returned a guilty verdict.  See 703 F.3d at 58.  On appeal, the defendants challenged "the validity of the Government's Klein conspiracy theory."  703 F.3d at 59.

In Coplan, the Second Circuit rejects the defendants' challenge to the validity of Klein conspiracies.  See 703 F.3d at 59-62.  The Second Circuit begins by explaining the Klein conspiracy's history, including Haas, Hammerschschmidt, and Klein.  See 703 F.3d at 60-61.  In sum, the Second Circuit explains that "The *Klein* conspiracy doctrine at issue here is the progeny of *Haas* and *Hammerschmidt*."  703 F.3d at 60.  Notably, the Second Circuit adds in a footnote that "the appellation '*Klein* conspiracy' is in some sense a misnomer, since the primary holding of *Klein* is a quotation from *Hammerschmidt*."  703 F.3d at 60 n.18.

After surveying the Klein conspiracy's history, the Second Circuit responds to the

defendants' argument that Klein conspiracies are "textually unfounded" in § 371.  703 F.3d at 61.

The Second Circuit reasons:

> There is nothing in the Government's brief recognizable as statutory
> interpretation -- no discussion of plain meaning, legislative history, or interpretive
> canons.  Indeed, in all 325 pages of its brief, the Government does not even quote
> the text of § 371.  The Government thus appears implicitly to concede that the
> *Klein* conspiracy is a common law crime, created by the courts rather than by
> Congress.  That fact alone warrants considerable judicial skepticism.  *See United
> States v. Lanier*, 520 U.S. 259, 267 n. 6 . . . (1997)("Federal crimes are defined by
> Congress, not the court . . . ."); *see also Rogers v. Tennessee*, 532 U.S. 451,
> 476 . . . (2001)(Scalia, J., dissenting)("[T]he notion of a common-law crime is
> utterly anathema today . . . .").
>
> . . . .
>
> [I]t is now well established that § 371 "is not confined to fraud as that term has
> been defined in the common law," but reaches "'any conspiracy for the purpose of
> impairing, obstructing or defeating the lawful function of any department of
> Government.'"  *Dennis v. United States*, 384 U.S. 855, 861, . . . (1966)(quoting
> *Haas*, 216 U.S. at 479 . . . ).  Indeed, Coplan (whose counsel "takes the laboring
> oar" on the *Klein* conspiracy issue) "readily concedes that, were the weight of this
> Circuit's case law outcome-determinative in this matter, his challenge to the
> government's *Klein* theory would fail."  Coplan Reply 3.
>
> Although the defendants argue forcefully on appeal that we should follow
> the example of *Skilling v. United States*, [561 U.S. 358] . . . (2010), and "pare" the
> body of § 371 precedent "down to its core," [Skilling v. United States, 561 U.S. at
> 404], such arguments are properly directed to a higher authority.  As an
> intermediate appellate court, we are bound to follow the dictates of Supreme Court
> precedents, no matter how persuasive we find the arguments for breaking loose
> from the moorings of established judicial norms by "paring" a statute.
>
> In sum, because the *Klein* doctrine derives from and falls within the scope
> of the law of the Circuit (itself grounded on long-lived Supreme Court decisions),
> we reject the defendants' challenge to the validity of that theory of criminal
> liability.

United States v. Coplan, 703 F.3d at 61-62.  Having upheld the Klein theory's validity, the Second

Circuit adds that, to prove a Klein conspiracy, the United States must show: "(1) that [the]

defendant entered into an agreement (2) to obstruct a lawful function of the Government (3) by deceitful or dishonest means and (4) at least one overt act in furtherance of the conspiracy." Coplan, 703 F.3d at 61 (quoting United States v. Ballistrea, 101 F.3d at 832)(alterations in Coplan, but not in United States v. Ballistrea).

The Court confronted a Klein conspiracy in United States v. Tilga.  See 824 F. Supp. 2d at 1295.  In United States v. Tilga, Tilga and her co-conspirator used "trusts and offshore companies to purchase assets and set up new offshore accounts."  824 F. Supp. 2d at 1300.  Over a roughly five-year period, Tilga wired over eight million dollars from her offshore accounts into the United States, yet substantially underreported that income on her tax returns.  See 824 F. Supp. 2d at 1300-01.  The Grand Jury indicted Tilga and her co-conspirator, and the pair "pled guilty to Count One of the Indictment, charging a violation of 18 U.S.C. § 371 -- the Klein conspiracy."  824 F. Supp. 2d at 1301-02.  The Court's decision in Tilga focusses primarily on issues related to sentencing, but the Court explains in a footnote:

> A conspiracy to defeat the IRS' lawful function and victimize the IRS is known as a Klein conspiracy.  See United States v. Adkinson, 158 F.3d . . . . [at] 1154 . . . .  To show a Klein conspiracy the United States must show not only (i) the requisite act of a failure to properly report income, but also (ii) an agreement between at least two conspirators to impede the IRS' functioning and (iii) knowing participation in such a conspiracy.  See United States v. Adkinson, 158 F.3d at 1153; United States v. McKee, 506 F.3d . . . [at] 238 . . . .

824 F. Supp. 2d at 1301 n.8.

## ANALYSIS

The Court denies the Motion.  In the Motion, Kearney asserts that he is entitled to a new trial for four separate reasons: (i) the Court's Conspiracy instruction; (ii) the Court's advice of counsel instruction; (iii) the Court's decision not to excuse Clawson more quickly; and (iv) the

Court's decision not to excuse Maethner.  See Motion at 1-8.  The Court does not agree with any

of Kearney's arguments and explains its reasoning with respect to each argument in turn.

## I.     KEARNEY IS NOT ENTITLED TO A NEW TRIAL, BECAUSE THE COURT'S JURY INSTRUCTION REGARDING CONSPIRACY IS CORRECT.

First, the Court determines that Kearney is not entitled to a new trial on the basis of the

Court's conspiracy element instruction, because the Court's conspiracy instruction correctly

reflected the elements of the conspiracy that the United States charged.  Kearney alleges that the

Court's conspiracy instruction was erroneous, because the Court should have modified the Tenth

Circuit's pattern conspiracy instruction, because the United States charged a Klein conspiracy.

See Motion at 1-4; May 30 Tr. at 12:12 (Linnenburger).  Although the United States does not

contest that it charged a Klein conspiracy in this case, the Court disagrees with Kearney.  Although

Klein conspiracies have a unique moniker, fundamentally they are conspiracies to "defraud the

United States" under § 371.  18 U.S.C. § 371.  The Tenth Circuit has provided a pattern jury

instruction for § 371 conspiracies, which encompasses conspiracies to "defraud the United States,"

and, by extension, Klein conspiracies.  18 U.S.C. § 371.  Accordingly, the Court did not err by not

amending the Tenth Circuit's pattern instruction for a case involving a Klein conspiracy.

As the Court describes in greater detail above, 18 U.S.C. § 371 covers two conspiracies:

(i) conspiracies to "commit any offense against the United States," i.e., to commit some

underlying, predicate offense; and (ii) conspiracies to "defraud the United States."  18 U.S.C.

§ 371.  The two different § 371 conspiracies manifest differently; the former involves an

agreement to commit a particular crime, while the latter entails an agreement to cheat the federal

government.  See 18 U.S.C. § 371.  Importantly, the latter does not require an underlying, predicate

offense.  See Klein, 247 F.2d at 916 (upholding a conspiracy charge even where the charges for

the related predicate offenses were dismissed).  Despite that the two § 371 conspiracies look different in practice, they are both criminalized under § 371.  See 18 U.S.C. § 371 (penalizing those who "conspire either to commit any offense against the United States, or to defraud the United States" (emphasis added)).  The Tenth Circuit has provided district courts in the Tenth Circuit with a pattern jury instruction for § 371 conspiracies.  See Pattern Instructions § 2.19, at 111.  Notably, the Tenth Circuit's pattern jury instruction for § 371 conspiracies does not distinguish between conspiracies to commit an underlying offense from conspiracies to defraud. See Pattern Instructions § 2.19, at 111.  In other words, there is no indication in the pattern instruction that a district court should modify or stray from the pattern instruction in a case involving a § 371 conspiracy "to commit any offense," and not in a § 371 conspiracy to "defraud the United States," or vice versa.  18 U.S.C. § 371.  See Pattern Instructions § 2.19, at 111.

Here, Kearney argues that the Court should have modified the pattern jury instruction on conspiracies, because this case involves a Klein conspiracy.  See May 30 Tr. at 12:8-12 (Court, Linnenburger).  Kearney premises his argument on his belief that Klein conspiracies are distinct conspiracies with a particularized mens rea requirement that necessitates modifications to the Tenth Circuit's pattern conspiracy instruction.  See Kearney Submission at 1-2; May 30 Tr. at 13:6-14 (Linnenburger).  According to Kearney, Klein conspiracies are distinct from § 371 conspiracies to commit an underlying offense and from § 371 conspiracies to defraud the United States, such that a district court must modify the § 371 pattern instruction for a Klein conspiracy case.  See May 30 Tr. at 12:8-12 (Court, Linnenburger).  The Court disagrees with Kearney's argument, because Klein conspiracies are not exceptional conspiracies: they are § 371 conspiracies "to defraud the United States," specifically the IRS.  18 U.S.C. § 371.

- 46 -

That Klein is premised on caselaw interpreting § 371 conspiracies to defraud the United States supports the Court's determination that a so-called "Klein conspiracy" is a § 371 conspiracy to "defraud the United States." 18 U.S.C. § 371. The Second Circuit's decision in Klein is based in large part on Hammerschmidt, see Klein, 247 F.2d at 916 (quoting Hammerschmidt, 265 U.S. at 188), which in turn is premised in large part on Haas, see Hammerschmidt, 265 U.S. at 185 (indicating that the indictment in Hammerschmidt is "based[] on the language in Haas"). Importantly, neither the conspiracy at issue in Haas nor the conspiracy at issue in Hammerschmidt fairly can be called a "Klein conspiracy," because neither involves the IRS, which is the hallmark of a Klein conspiracy. See United States v. Adkinson, 158 F.3d at 1154 (explaining that a Klein conspiracy is "[a] section 371 conspiracy where the victim is the IRS"). Instead, both Haas and Hammerschmidt concern garden-variety conspiracies to defraud the United States under § 371. See Haas, 215 U.S. at 472 (concerning a conspiracy to defraud the Department of Agriculture's Bureau of Statistics); Hammerschmidt, 265 U.S. at 185 (involving a conspiracy to subvert the draft). Nevertheless, in Klein, the Second Circuit takes Hammerschmidt, and by extension Haas, and applies them to a conspiracy to defraud the IRS. See Klein, 247 F.2d at 916 (quoting Hammerschmidt, 265 U.S. at 188).

In other words, Klein is merely an extension of Haas and Hammerschmidt. Klein takes two foundational Supreme Court cases on § 371 conspiracies to defraud the United States -- Haas and Hammerschmidt -- and applies them to a conspiracy to cheat the IRS. See Klein, 247 F.2d at 916 (quoting Hammerschmidt, 265 U.S. at 188). The Court is not alone in its assessment that Klein is simply an outgrowth of Haas and Hammerschmidt. In the decades since it announced Klein, the Second Circuit has acknowledged that Klein is the "progeny" of § 371 conspiracy-to-defraud caselaw. Coplan, 703 F.3d at 60. In fact, the Second Circuit has suggested that the "Klein

conspiracy" label is a "misnomer," because Klein simply applies the Hammerschmidt holding to a conspiracy against the IRS. Coplan, 703 F.3d at 60 n.18.

Additionally, the similarities between the elements of a so-called "Klein conspiracy" and the elements of a § 371 conspiracy to defraud the United States further support the Court's conclusion that a Klein conspiracy is merely a § 371 conspiracy. The Second Circuit establishes that, to prove a conspiracy to defraud the United States, "the government need only show that (1) [the defendant] entered into an agreement (2) to obstruct a lawful function of the government (3) by deceitful or dishonest means and (4) at least one overt act in furtherance of the conspiracy." United States v. Ballistrea, 101 F.3d at 832 (quoting United States v. Caldwell, 989 F.2d at 1059)(alterations in United States v. Ballistrea, but not in United States v. Caldwell). Similarly, the Second Circuit states that, to prove a Klein conspiracy, the United States must show: "(1) that [the] defendant entered into an agreement (2) to obstruct a lawful function of the Government (3) by deceitful or dishonest means and (4) at least one overt act in furtherance of the conspiracy." Coplan, 703 F.3d at 61 (quoting United States v. Ballistrea, 101 F.3d at 832)(alterations in Coplan, but not in United States v. Ballistrea). Compared side-by-side, the Second Circuit's Klein conspiracy elements and the Second Circuit's conspiracy-to-defraud-the-United-States elements are the same: (i) an agreement; (ii) to obstruct the United States; (iii) by deceitful means; and (iv) an overt act. Compare United States v. Ballistrea, 101 F.3d at 832, with Coplan, 703 F.3d at 61.[8] Tellingly, the Second Circuit relies on caselaw on § 371 conspiracies to defraud the United

___

[8]Here, the Court uses Second Circuit caselaw, and not Tenth Circuit caselaw, to conduct a side-by-side comparison of a Klein conspiracy's elements and a conspiracy to defraud the United States' elements. The Court makes the comparison based on Second Circuit caselaw for two reasons. First, the Tenth Circuit has not provided explicitly the elements of a Klein conspiracy; it has provided only the elements for a conspiracy to defraud the United States. See United States v. Bedford, 536 F.3d at 1156. Accordingly, the Court cannot rely on Tenth Circuit caselaw to

States in reciting a <u>Klein</u> conspiracy's elements.  <u>See</u> <u>Coplan</u>, 703 F.3d at 61 (quoting <u>United States</u>
<u>v. Ballistrea</u>, 101 F.3d at 832).  This comparison highlights that the "<u>Klein</u> conspiracy" label
ultimately is misleading, because it creates a distinction without a difference.  <u>Klein</u> conspiracies
are conspiracies to defraud the United States, where the entity at issue happens to be the IRS.  The
Court does not see why a conspiracy to defraud the IRS merits a unique moniker -- a "<u>Klein</u>
conspiracy" -- while similar conspiracies to defraud other United States departments or agencies
do not get their own label.  Regardless why, the "<u>Klein</u> conspiracy" label creates the false
impression that a <u>Klein</u> conspiracy is distinct from a conspiracy to defraud the United States, when,
in reality, it is not.  <u>Compare</u> <u>United States v. Ballistrea</u>, 101 F.3d at 832, <u>with</u> <u>Coplan</u>, 703 F.3d
at 6.

For these reasons, the Court concludes that a so-called <u>Klein</u> conspiracy is, at its core, a
§ 371 conspiracy to defraud the United States.  A <u>Klein</u> conspiracy is a conspiracy to defraud the
IRS, <u>see</u> <u>United States v. Adkinson</u>, 158 F.3d at 1154, which is a conspiracy to defraud the United
States.  A conspiracy to defraud the United States is charged under § 371.  <u>See</u> 18 U.S.C. § 371.
Because a <u>Klein</u> conspiracy is a § 371 conspiracy, the Court does not see why it should deviate
from the Tenth Circuit's pattern instruction on § 371 conspiracies in a <u>Klein</u> conspiracy case.  <u>See</u>
Pattern Instructions § 2.19, at 111.  The Tenth Circuit's pattern conspiracy instruction is applicable
generally to all conspiracies charged under § 371, and it does not draw a distinction between
conspiracies to "commit an offense against the United States" and conspiracies to "defraud the

_____

draw a side-by-side comparison.  By contrast, the Second Circuit has announced a <u>Klein</u>'s
conspiracy's elements and a conspiracy to defraud the United States' elements, such that the Court
can conduct a side-by-side comparison.  <u>See</u> <u>United States v. Ballistrea</u>, 101 F.3d at 832; <u>Coplan</u>,
703 F.3d at 6.  Importantly, the Second Circuit announced <u>Klein</u> in the first instance.  <u>See</u> <u>Klein</u>,
247 F.2d at 916.  The Court finds it helpful to get its elements from the horse's mouth and,
therefore, relies on the Second Circuit's elements.

United States."  18 U.S.C. § 371.  See Pattern Instructions § 2.19, at 111.  Further, the pattern instruction provides no indication that the Court should modify the pattern instruction because of the nature of the conspiracy at issue.  The Court does not see why the pattern instruction would consider a so-called "Klein conspiracy" differently.  Accordingly, the Court stands by its decision not to modify the Tenth Circuit's pattern conspiracy instruction in this case involving a conspiracy to defraud the IRS.

In the end, "as a whole, the [Court's] instructions correctly state the law and provide the jury with an 'intelligent, meaningful understanding of the applicable issues and standards.'" United States v. Winchell, 129 F.3d at 1096 (quoting United States v. Laughlin, 26 F.3d at 1528). The Court gave the Tenth Circuit's pattern conspiracy instruction, with some modifications.  See Court's Final Jury Instructions at 17.  That pattern instruction provides the elements the United States must prove beyond a reasonable doubt to prove both conspiracies charged under § 371 -- conspiracies to commit and underlying offense and conspiracies to defraud the United States. Additionally, the Court read the entire Indictment to the jury, including the portion that lays out the nature of the alleged conspiracy.  See Court's Final Jury Instructions at 14-16.  In so doing, the Court complied with its obligation to tailor its instructions to the Indictment.  See Schmuck v. United States, 489 U.S. 705, 717 (1989); United States v. Miller, 891 F.2d at 1235.  Taken together, the Indictment and the conspiracy instruction "accurately informed the jury of the governing law." United States v. Pinson, 542 F.3d 822, 831 (10th Cir. 2008).  See United States v. Winchell, 129 F.3d at 1096 (instructing courts to review the sufficiency of their instructions "as a whole").  The Indictment instruction served to give the jury a full understanding of the particular conspiracy charged, while the conspiracy instruction gave the jury a specific list of the elements of

conspiracies charged under § 371, which includes the conspiracy the Indictment charges here.  See Indictment ¶ 3, at 1-2.

The Court adds that, although the Court did not employ the exact language that Kearney proposes in the First Kearney Proposed Instructions or the Kearney Submission, the Court's Final Jury Instructions incorporate all the mens rea requirements that Kearney proposed, save for use of the terms "specific purpose" and "specific intent."   Compare Kearney Submission at 2-3 (requesting an instruction that conspiracy as charged requires "knowingly enter[ing] into an agreement . . . for the specific purpose of defrauding the IRS or impeding its lawful function . . . [and] knowingly and voluntarily participat[ing] in said agreement with the specific intent to defraud the IRS or impede its lawful function"), with Court's Final Jury Instructions at 14-17 (informing the jury that the Indictment alleges that Kearney "knowingly, unlawfully, and willfully combined, conspired, confederated, agreed, and acted interdependently with one another and with others . . . to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful Government function of the Internal Revenue Service," and conspiracy as charged requires a showing that "Kearney knew the essential objective of the conspiracy," and that he "knowingly and voluntarily participated in the conspiracy" (emphasis added)).  In sum, the Court's Final Jury Instructions "comport with those particulars" that the Indictment lays out, and informed the jury about the law pertaining to the charges in the Indictment, including the appropriate mens rea requirements.  United States v. Miller, 891 F.3d at 1235.

Kearney's argument regarding United States v. Bedford is unpersuasive.  Kearney contends that United States v. Bedford establishes that the United States "has to prove what the necessary specific intent is . . . for the underlying offense."  May 30 Tr. at 25:13-22 (Linnenburger)(citing United States v. Bedford, 536 F.3d at 1148).  As the Court describes in greater detail in its legal

section above, in United States v. Bedford, the Tenth Circuit provides the elements of a conspiracy to defraud the United States.  See United States v. Bedford, 536 F.3d at 1156.  Knowledge of the "essential objective of the conspiracy" and "knowing[] and voluntar[y] participat[ion]" are among those elements.  United States v. Bedford, 536 F.3d at 1156.  The Court's Final Jury Instructions informed the jury regarding those mens rea requirements.  See Court's Final Jury Instructions at 14-17 (informing the jury that conspiracy requires a showing that "Kearney knew the essential objective of the conspiracy," and that he "knowingly and voluntarily participate in the conspiracy").

For the same reason, Kearney's argument concerning United States v. Tilga is also unpersuasive.  In United States v. Tilga, the Court handles issues related to sentencing, and explains in a footnote for context: "To show a Klein conspiracy the United States must show not only (i) the requisite act of a failure to properly report income, but also (ii) an agreement between at least two conspirators to impede the IRS' functioning and (iii) knowing participation in such a conspiracy."  824 F. Supp. 2d at 1301 n.8.  According to Kearney, the Court's decision in United States v. Tilga establishes that Klein conspiracies involve "a requirement of specific intent."  May 30 Tr. at 14:7-19 (Linnenburger)(citing United States v. Tilga, 824 F. Supp. 2d at 1301 n.8). Kearney suggests that the specific intent requirement was missing from the Court's Final Jury Instructions.  See Motion at 1; Motion Reply at 2.  That is not the case.  The Court read the jury the Indictment, and in so doing informed the jury that the objective of the conspiracy at issue was "to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful Government function of the Internal Revenue Service."  Court's Final Jury Instructions at 14.  Additionally, the Court instructed the jury that conspiracy under § 371 requires a showing that "Kearney knew the essential objective of the conspiracy," and that he "knowingly and

voluntarily participated in the conspiracy." Court's Final Jury Instruction at 17.  In other words, the Court's Final Jury Instructions hit on all the essential elements that the Court noted in United States v. Tilga.  Compare Court's Final Jury Instructions at 14-17, with United States v. Tilga, 824 F. Supp. 2d at 1301 n.8.  For all these reasons, the Court stands by its conspiracy instruction and declines to grant Kearney a new trial on the basis of alleged deficiencies in that instruction.

## II. KEARNEY IS NOT ENTITLED TO A NEW TRIAL, BECAUSE THE COURT'S JURY INSTRUCTION REGARDING KEARNEY'S ADVICE-OF-COUNSEL DEFENSE IS CORRECT.

Second, the Court concludes that Kearney is not entitled to a new trial on the basis of the Court's advice-of-counsel instruction, because the Court's advice-of-counsel instruction properly informed the jury about Kearney's defense.  Kearney contends that the Court's advice-of-counsel instruction gave the jurors the false impression that Kearney's advice-of-counsel defense applied only to one count and not to both counts.  See Motion at 3-4.  He raises two separate arguments in support of that contention: one regarding the instruction's placement relative to the other instructions and the other regarding the instruction's substance.  First, Kearney asserts that "the way the instructions were provided" gave the jury the false impression that the advice-of-counsel instruction did not apply to Count 1, the conspiracy count.  May 30 Tr. at 15:1-4 (Linnenburger). Second, Kearney avers that "the Court's final instructions included a good faith reliance instruction, but was limited to 'the income tax return form for calendar year 2011;" such that it was limited to the § 7206(2) charge and did not include the § 371 charge.  Motion at 3.

The Court determines that neither of Kearney's arguments are availing.  First and foremost, the Court determines that Kearney waived his argument regarding the advice-of-counsel instruction's placement, because he agreed to the instruction's placement at the instruction conference that the Court held with the parties on the fourth day of trial.  While the Court does not

believe that Kearney preserved his argument regarding the advice-of-counsel instruction's placement, the Court concludes that its advice-of-counsel instruction is correct -- both in substance and placement -- and properly instructed the jury about the defense as it relates to both counts.

### A. KEARNEY AGREED TO THE ORDER OF THE COURT'S JURY INSTRUCTIONS, INCLUDING THE ADVICE-OF-COUNSEL INSTRUCTION.

As an initial matter, the Court determines that Kearney did not preserve his argument with respect to the advice-of-counsel instruction's placement.  Kearney states that "the way the instructions were provided" gave the jury the false impression that the advice-of-counsel instruction did not apply to Count 1, the conspiracy count.  May 30 Tr. at 15:1-4 (Linnenburger).  Kearney does not elaborate on what he means when he says "the way the instructions were provided," but the Court construes Kearney's argument to challenge the advice-of-counsel instruction's placement relative to the other instructions.  May 30 Tr. at 15:1-4 (Linnenburger).  The Court concludes that Kearney waived this argument when he agreed to the advice-of-counsel instruction's placement.

As the Court describes in greater detail in its procedural background section above, the Court met with counsel regarding instructions on the fourth day of trial.  See Trial Clerk's Minutes at 19.  At that conference, the Court worked with the parties to find an appropriate order for the elemental instructions and the related instructions.  Specifically, the Court suggested

> after . . . the elements on conspiracy, let's put the knowingly instruction there . . . .
> Let's then also put the unanimity [instruction] . . . .  And then we will put Count
> II's elements, and then we will put the willful instruction . . . and then we put the
> advice of counsel [instruction]. . . .  Do y'all like that order?

Trial Tr. at 982:15-23 (Court).  Kearney agreed to the Court's proposed order of instructions.  See Trial Tr. at 982:24 (Linnenburger).

- 54 -

Because Kearney agreed to the Court's suggested order of instructions, the Court determines that Kearney waived his ability to challenge the instruction's placement after trial. Waiver is a prudential doctrine that prevents a party from raising an issue before an appellate court where the party failed to raise or brief an issue before the lower court. See Jean-Claude Andre & Sarah Erickson Andre, Federal Appeals Jurisdiction and Practice Highlights § 4:7 (2023 ed.). Courts of Appeals frequently employ the waiver doctrine in cases concerning jury instructions where a party challenges an instruction that it proposed below, see, e.g., United States v. Harris, 695 F.3d 1125, 1130 n.4 (10th Cir. 2012)(concluding that a defendant waived his right to attack an instruction's sufficiency where he proffered the instruction at issue), or where a party challenges an instruction that it agreed to below, see, e.g., United States v. Visinaiz, 428 F.3d 1300, 1310-11 (10th Cir. 2005)(concluding that a defendant waived his ability to challenge an instruction's sufficiency after the district court adopted the defendant's proffered modifications and the defendant approved).

Here, the Court is not an appellate court reviewing a lower court's jury instructions. Nevertheless, in the Motion, Kearney calls on the Court to do something substantially similar: to review its own jury instructions, particularly the order in which the Court gave those instructions. See Motion at 3. Because the Court is, in essence, reviewing its own work, the Court draws on waiver, a doctrine more commonly invoked on appeal. The Court does not see why it should allow Kearney to challenge the advice-of-counsel instruction's placement when Kearney approved the instruction's placement at the conference on the fourth day of trial. See Trial Tr. at 982:24 (Linnenburger); United States v. Visinaiz, 428 F.3d at 1310-11. Accordingly, the Court determines that Kearney waived his arguments regarding the advice-of-counsel instruction's placement when he agreed to the instruction's placement. See Trial Tr. at 982:24 (Linnenburger).

B.     THE COURT INSTRUCTED THE JURY CORRECTLY REGARDING KEARNEY'S ADVICE-OF-COUNSEL DEFENSE.

While Kearney waived his arguments regarding the advice-of-counsel instruction's placement, the Court nevertheless determines that Kearney's arguments regarding the advice-of-counsel defense are unavailing, because the Court's advice-of-counsel instruction did not give the jury the false impression that Kearney's advice-of-counsel defense applies only to one count, either on account of its wording or its placement relative to other instructions.  Accordingly, the Court declines to grant Kearney a new trial on the basis of any deficiency in its advice-of-counsel instruction.

The advice-of-counsel instruction's wording does not impermissibly cabin the instruction to Count 2.  The Court instructed the jury:

> One element that the government must prove beyond a reasonable doubt is that Mr. Kearney had the unlawful intent to make a false material statement on the income tax return form for calendar year 2011.  Evidence that Mr. Kearney in good faith followed the advice of counsel would be inconsistent with such an unlawful intent.  Unlawful intent has not been proved if Mr. Kearney, before acting, (i) requested for advice of counsel on the legality of a proposed action; (ii) made full disclosure of the relevant facts to counsel; (iii) received advice from counsel that the action to be taken will be legal; and (iv) relied in good faith on counsel's advice.

Court's Final Jury Instructions at 24.  The instruction that the Court provided the jury references Count 2 -- fraudulent and false statements on a tax return -- and not Count 1 -- conspiracy. Specifically, the Court instructs:

> One element that the government must prove beyond a reasonable doubt is that Mr. Kearney had the unlawful intent to make a false material statement on the income tax return form for calendar year 2011.  Evidence that Mr. Kearney in good faith followed the advice of counsel would be inconsistent with such an unlawful intent . . . .

Court's Final Jury Instructions at 24.   The Court invokes Count 2 in the advice-of-counsel instruction solely to give the jury an example of how the defense interacts with the charges' mens rea requirements.   The Court determined that it was prudent to give the jury an example mens rea element in the advice-of-counsel instruction for two reasons.

First, the Ninth Circuit Pattern Instruction on the advice-of-counsel defense provides an example mens rea.   The Ninth Circuit Pattern Instructions provide:

> One element that the government must prove beyond a reasonable doubt is that the defendant had the unlawful intent to [*specify applicable unlawful act*]. Evidence that the defendant in good faith followed the advice of counsel would be inconsistent with such an unlawful intent. Unlawful intent has not been proved if the defendant, before acting, made full disclosure of all material facts to an attorney, received the attorney's advice as to the specific course of conduct that was followed, and reasonably followed the attorney's recommended course of conduct or advice in good faith.

Ninth Circuit Pattern Instructions 4.11, at 80 (italics and underlining in original).   Normally, when the Court has a Tenth Circuit pattern instruction on point, it uses that instruction and strives not to modify that pattern instruction more than necessary.   In this instance, the Court did not have a Tenth Circuit pattern instruction on point of the advice-of-counsel defense.   Rather than create one out of whole cloth, the Court turned to the other Courts of Appeals, and selected the Ninth Circuit Pattern Instructions.   The Ninth Circuit pattern advice-of-counsel instruction invokes an example mens rea element -- "[o]ne element that the government must prove beyond a reasonable doubt is that the defendant had the unlawful intent to . . ."; thus, the Court provides an example mens rea in its instruction as well.

Second, the Court determined that providing an example would assist the jury in understanding how the advice-of-counsel defense impacts the charges at issue.   It is well-settled in Tenth Circuit criminal caselaw that good-faith reliance on the advice of counsel is not a

"complete defense." United States v. Wenger, 427 F.3d at 853 (citing United States v. United Med. & Surgical Supply Corp., 989 F.2d 1390, 1403 (4th Cir. 1992)). Instead, the Tenth Circuit establishes that good-faith reliance on the advice of counsel negates the "mens rea element of a criminal prosecution." United States v. Wenger, 427 F.3d at 853. Accordingly, the Court wanted to ensure that its instruction on Kearney's advice-of-counsel defense would inform the jury on how the defense interacts with the charges' mens rea elements. To that end, the Court uses Count 2, and its mens rea requirement, as an example for the jury. It was unnecessary to provide an example for both counts. Instead, one example is sufficient to convey the message that good-faith reliance on the advice of counsel negates mens rea. See United States v. Wenger, 427 F.3d at 853. The Court could have used Count 1 as its illustration, but used Count 2 instead of Count 1, because Count 2's mens rea requirement is more straightforward, and, therefore, makes for a cleaner example. Compare Court's Final Jury Instructions at 17 (establishing that Count 1's mens rea requirements include: (i) knowledge of a conspiracy's objective, (ii) knowing participation in the conspiracy, and (iii) voluntary participation in the conspiracy), with Court's Final Jury Instructions at 21 (establishing that Count 2's mens rea requirement is willfulness).

Additionally, the other portions of the advice-of-counsel instruction's wording do not imply that the defense only applies to Count 2. To the contrary, after the Court provides its Count 2 illustration, the Court informs the jury that "[e]vidence that Mr. Kearney in good faith followed the advice of counsel would be inconsistent with such an unlawful intent." Court's Final Jury Instructions at 24. "Unlawful intent" is a broad term that can refer to many different mens rea requirements, including those for Count 1 or Count 2. After that, the Court provides the defense's elements. See Court's Final Jury Instructions at 24. At no point does the Court use any language

that limits the instruction only to Count 2.  In the absence of such language, a juror listening to the instructions would understand that the instruction applies to both counts, and not just to Count 2.

Kearney's argument that the advice-of-counsel instruction's placement gave the jury the false impression that the advice-of-counsel defense only applied to Count 2, and not to Count 1, is unconvincing.  Typically, when an instruction applies to multiple counts, the Court places the instruction after the element instructions for all the counts, rather than before the first element instruction.  The Court did here what it always does: the Court placed the advice-of-counsel instruction -- an instruction that applies to both counts -- after the element instructions for both counts.  The Court had three options on where to place the advice-of-counsel instruction: (i) before both elemental instructions, (ii) between the two elemental instructions, or (iii) after both elemental instructions.  In preparing its instructions, the Court determined that the first option was undesirable, because it does not make sense to explain a defense that negates a mens rea element before explaining the relevant mens rea elements.  Similarly, the Court determined that it did not favor the second option, because it might confuse the jury to put the advice-of-counsel instruction between the two elemental instructions when the advice-of-counsel instruction applies to both elemental instructions.  Ultimately, the Court opted to adhere to its normal practice and put the advice-of-counsel instruction after the element instructions for both counts.  See Court's Final Jury Instructions at 21-25.  At the end of the day, the Court had to place the advice-of-counsel instruction somewhere, and the Court determined that placing it after both elemental instructions was the best way of reducing the risk of confusing the jury.  The Court reasoned that its choice of placement is logical and that it does not imply impermissibly that the advice-of-counsel defense only applies to Count 2.  Evidently, the parties agree, because neither party objected to the Court's proposed instruction order at the instructions conference after the fourth day of trial.  See Trial Tr.

at 982:15-24 (Court, Linnenburger).  For these reasons, the Court stands by its advice-of-counsel instruction -- both in substance and placement -- and declines to grant Kearney a new trial on the basis of any alleged deficiencies in that instruction.

### III.   KEARNEY IS NOT ENTITLED TO A NEW TRIAL ON THE BASIS OF THE PROBLEMS WITH CLAWSON.

Third, the Court determines that Kearney is not entitled to a new trial on the basis of the Court's decision to excuse Clawson on the morning of the second day of trial.  On the second day of trial, Clawson indicated that Kearney intimidated him and that, as a result, he was feeling anxious.  See Trial Tr. at 88:15-19 (Rotonda).  Clawson arrived to trial late and, once inside the courtroom, he appeared visibly upset.  See Trial Tr. at 93:6-7 (Court).  The Court was reluctant to release a juror on the second day of trial and waited to see if Clawson's demeanor improved.  See Trial Tr. at 89:13-15 (Court).  The Court's experience is that anxious jurors often settle down and become good factfinders, proud of their service on the jury.  Over the course of the morning, however, Clawson did not become more composed, so the Court excused him after the morning break.  See Trial Tr. at 143:8-11 (Court).

The Court has been on the bench for nearly twenty years, and in its time presiding over countless jury trials, it has had a number of jurors become anxious after being sworn in.  Jurors easily can become overwhelmed by the setting, the Court's formalities, and the enormity of their responsibility as jurors.  Sometimes the Court can work with a panicked juror to help him or her adjust to his or her new atmosphere and role.  Sometimes, the Court is not as successful.  In this instance, the Court was not successful in its attempts to work with Clawson.  The Court did what it could on the morning of the second day of trial to see if Clawson could perform his duties as a

juror.  His demeanor in the courtroom suggested to the parties and to the Court that he could not serve.  The Court then excused Clawson.

Kearney protests that the Court should have excused Clawson sooner and that its failure to excuse Clawson more quickly prejudiced the other jurors.  See Motion at 5-6.  The Court disagrees with Kearney's argument for two reasons.  First, it would not have been prudent for the Court to excuse Clawson before Clawson came to the courthouse or sat with the other jurors.  Once the Court learned that Clawson was feeling anxious and did not want to come to the courthouse, the Court wanted to see Clawson in-person and assess his condition to see if the Court could work with Clawson.  Excusing Clawson before he arrived at the courthouse or before he sat with the other jurors would have prevented the Court from making those assessments or attempting to work with Clawson.  Excusing Clawson before he arrived also would have sent a message to the other jurors that they can get out of jury duty too if they just act worried.  The Court has to discourage conduct like Clawson's if it wants to get a jury to attend trial and do its duties.

Second, it is purely speculative that the time Clawson spent with the other jurors on the morning of the second day of trial impacted the other jurors.  In the end, Clawson was in the courtroom along with the other jurors for just over an hour on the second day of trial.  See Trial Clerk's Minutes at 6-7 (indicating that the jurors, including Clawson, entered the courtroom at 8:59 a.m. and that the mid-morning break began at 10:04 a.m.).  The Court has no reason to believe that the limited time that Clawson spent among the other jurors that morning prejudiced the other jurors, or otherwise impacted the other jurors' abilities to be fair and impartial.  Accordingly, the Court concludes that the "interest of justice" does not require the Court to grant Kearney a new trial on the basis of the problems with Clawson.  Fed. R. Crim. P. 33(a).

## IV.    KEARNEY IS NOT ENTITLED TO A NEW TRIAL ON THE BASIS OF THE PROBLEMS WITH MAETHNER.

Finally, the Court determines that Kearney is not entitled to a new trial on the basis of the Court's decision not to excuse Maethner.  Part way through trial, Maethner indicated that he had prior business dealings with one of Kearney's business associates -- Yearout.  See Maethner Note at 1.  Maethner had not indicated he had ties to Yearout during voir dire.  Yeaorut did not testify, but his name came up at a few points during Fiser's testimony.  See, e.g., Trial Tr. at 632:18-23 (Fiser); id. at 634:22-635:19 (Fiser); id. at 637:5-6 (Fiser); id. at 645:13-18 (Fiser).  Maethner indicated in his note to the Court that his prior dealings with Yearout would not impact his ability to be fair and impartial.  See Maethner Note at 1.

During voir dire, the Court and counsel do their best to screen out potential jurors who have ties to the parties, witnesses, events, and entities involved in a particular case that will prejudice those jurors.  Sometimes, even the most thorough voir dire examinations can fail to illuminate a juror's pre-existing ties to a case.  Here, voir dire did not draw out Maethner's prior business relationship with Yearout.  Maethner's tie to the case, however, is attenuated: Maethner -- a juror -- met with Yearout -- a person mentioned a handful of times during one witness' testimony -- twice in a professional context.  See Maethner Note at 1.  Further, the Court does not know, on the basis of the Maethner Note, how Maethner feels about Yearout.  The Court has no sound reason to believe that Maethner's limited, professional relationship with Yearout prejudiced Maethner against Kearney.  Additionally, the Court has no reason to question Maethner's assessment that his prior dealings with Yearout did not impact his ability to be a fair and impartial juror.

Kearney protests, however, that Maethner's decision to refer to Yearout as "KY" in the Maethner Note, Maethner Note at 1, is a "telling sign of closeness between this juror and Mr. Yearout," Motion at 6.  The Court disagrees with Kearney's argument, because it makes a mountain out of a molehill.  In the Maethner Note, Maethner writes: "I know a Kevin Yearout (KY) who was identified as a partner of Victor Kearney . . .  I have met with KY . . . ."  Maethner Note at 1.  The Court determines that Maethner included the "KY" parenthetical to introduce "KY" as a convenient shorthand for Yearout.  Indeed, the Court regularly invokes similar shorthand names in its orders and memorandum opinions: it provides a full name, offsets a shorthand in parentheses, and then uses the shorthand downstream of the full citation.  That is how Maethner introduces and uses "KY" in the Maethner note: he gives Yearout's full name, offsets "KY" in parentheses, and then uses "KY" downstream.  Maethner Note at 1.  The Court has no reason to conclude that Maethner abbreviated Yearout's name for any other reason than convenience.  For all these reasons, the Court concludes that the "interest of justice" does not require the Court to grant Kearney a new trial on the basis of the problems with Maethner.  Fed. R. Crim. P. 33(a).

**IT IS ORDERED** that the Motion for New Trial and for Extension of Time to Submit Supplemental Motion for New Trial, filed March 24, 2023 (Doc. 141), is denied.

_____
UNITED STATES DISTRICT JUDGE

- 63 -

*Counsel:*

Alexander M. M. Uballez
  United States Attorney
Sean J. Sullivan
Kimberly A Brawley
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

       *Attorneys for the Plaintiff*

Paul Linnenburger
Lane Linnenburger Lane LLP
Albuquerque, New Mexico

       *Attorneys for Defendant Victor Kearney*

Jason Bowles
Bowles Law Firm, LLC
Albuquerque, New Mexico

       *Attorneys for Defendant Robert Fiser*